370 So.2d 839 (1979)
Henry E. WOLFF, Appellant,
v.
DADE COUNTY, Appellee.
No. 78-1595.
District Court of Appeal of Florida, Third District.
May 8, 1979.
*840 John G. Fletcher, Miami, for appellant.
Stuart L. Simon, County Atty., and Robert A. Ginsberg, Asst. County Atty., for appellee.
Before PEARSON and KEHOE, JJ., and EZELL, BOYCE F., Jr. (Ret.), Associate Judge.
PEARSON, Judge.
Appellant Henry E. Wolff, plaintiff in the circuit court, brought an action for declaratory decree and injunction claiming that the denial by defendant-appellee Dade County of his application for reclassification of sixteen hundred acres of land amounted to an unconstitutional taking of property. The County prevailed upon a holding by the circuit court judge after trial that Wolff had failed to carry his burden of proving that the legislative action of the County was unreasonable, arbitrary and unconstitutional.
Henry Wolff is the owner of sixteen hundred acres of land located on North Kendall Drive, west of the area which is designated for development in the Dade County Master Plan and which is authorized by Section 163.3161 et seq., Florida Statutes (1977).[1] In 1977, Wolff filed an application with the Dade County Commission for reclassification of his sixteen hundred acres from a classification of agricultural and open land to a classification that would allow residential development. This application was one of many presented to the Dade County Commission at its annual review of the master plan in order to make amendments thereto. After extensive proceedings before the Dade County Commission, the Wolff application for reclassification was one of those denied. Thereupon, Wolff filed a complaint in the circuit court entitled "Complaint for Declaratory and Injunctive Relief," wherein he prayed:
"2. That this Honorable Court enter a permanent injunction against Dade County compelling it to grant the application which is attached hereto as Exhibit A."
After the filing of an answer and affirmative defenses by the County, the matter proceeded to trial. An extensive final judgment was entered in which the trial judge made the following finding:
* * * * * *
"After careful consideration of the evidence presented at trial, the Court finds and determines that the County Commission had a rational basis for its legislative determination to deny Plaintiff's amendment application. City of Miami v. Kayfetz, 92 So.2d 798 (Fla. 1957); State v. Sawyer, 346 So.2d 1071 (Fla.2d DCA 1977). It is not the function of this Court to review the legislative wisdom of Ordinance No. 77-49. Judicial review is limited to determination of whether the enactment is within the scope of legislative authority and demonstrates a rational exercise of the police powers. This Court so holds. The County Commission may properly consider proposed Master Plan amendments in the light of available and future community services together with the adopted Master Plan goals, policies and objectives providing for managed and coordinated community growth. It is accordingly, ..."
This appeal is from that judgment.
It is clear that in this case there is no issue of interference with the environment affecting the interests of the public in the preservation of the present condition of the *841 land for ecological reasons. In other words, there is no suggestion that the County acted, for example, because the water supply, drainage or other natural resources would be damaged by the reclassification. We point this out as a preliminary to our consideration of the questions before us because such an issue may be presented upon future considerations of the master plan.
The enactment of a master plan for development is recognized as a proper exercise of the police power. See Dade County v. Yumbo, S.A., 348 So.2d 392 (Fla. 3d DCA 1977); and Home Rule Charter for Metropolitan Dade County, Florida, Art. I, § 1.01(A)(5). See also Eskind v. City of Vero Beach, 159 So.2d 209 (Fla. 1963). Although there appears to be no rigid set of standards for such a plan and for its implementation, such a plan should be written and implemented with a commitment toward: (1) the achievement of its goals and purposes, (2) the adherence to the consistency of its application, (3) the maintenance of the integrity of its amendment process, and (4) the protection at the various stages of accepted due process requirements. See 2 Fla.State L.Rev. 766 (1974).
Appellant Wolff's principal attack on the trial court's determination is based on the theory that because no criteria for the consideration of amendments are set out in the master plan, he (Wolff), having complied with the criteria prescribed by the Director of the Dade County Planning Department, must be granted a reclassification. We do not find ourselves limited to those particular factors considered by the Planning Director. On the contrary, we find that a review of the entire record shows a reasonable basis for legislative action in the denial of the application for reclassification of Wolff's land.
In this regard, it should be noted that the Supreme Court of Florida has repeatedly emphasized that any legislative enactment carries a strong presumption of constitutionality and that if there is a rational basis for the exercise of the State's police power by the legislative authority, such an enactment should not be reversed by the appellate court. See State v. Bales, 343 So.2d 9 (Fla. 1977); Askew v. Schuster, 331 So.2d 297 (Fla. 1976), and City of Miami v. Kayfetz, 92 So.2d 798 (Fla. 1957).
In making the determination that the record supports the reasonableness of the legislative action, we have been primarily concerned with appellant Wolff's argument that the Dade County Commission arbitrarily discriminated against his application in favor of other applications. The basis of this claim of discrimination is that at the time of the trial of his cause in the circuit court for alleged unreasonableness of the 1977 denial, the County had already conducted the 1978 proceedings upon applications for reclassification of the master plan.[2] In the 1978 proceedings, the County granted several applications which Wolff argues showed that the criteria prescribed by the County for the 1978 applicants established that he had met the criteria in 1977 because of the similarity between his land and the land in which reclassification was allowed in 1978. We have examined the evidence submitted on the 1978 proceedings, and while we have grave doubts about the propriety of admitting such evidence, we hold that even if properly admitted, such evidence does not demonstrate unreasonableness of the 1977 action by the County. The 1978 amendments approved by the County were not close to Wolff's property. In addition, the applications approved in 1978 do not extend the western boundary as far west as Wolff's application requested. When a line must be drawn as a demarcation for development, there will always be the criticism that it is arbitrary in some areas. This fact is not a proof of unreasonableness, because the line must be drawn. See City of Miami Beach v. Ocean & Inland Co., 147 Fla. 480, 3 So.2d 364, 366 (1941); and Polk Enterprises, Inc. v. City of Lakeland, 143 So.2d 917, 918-919 (Fla. 2d DCA 1962). Piecemeal changes in the boundary line are not well advised because of the domino effect.
* * * * * *

*842 "The proximity of a use identical to the one for which a variance is sought does not relieve the applicant of the burden of proving that his land will not yield a reasonable return if confined to the uses authorized by the zoning regulations. If the rule were otherwise, each nonconforming use would spawn a circle of similar variant uses, and each in turn would justify additional variances until the zone was destroyed." * * * 3 R. Anderson, American Law of Zoning 2d § 18.25 (1977).
In this opinion, we have not attempted to designate the criteria that the County must use in determining whether to grant an application for reclassification. We do feel constrained, however, to hold that a simple determination by the County that the development of an applicant's property is not needed is not a proper basis for a determination of the reasonableness of such an application. See Berkley v. State Department of Environmental Regulation, 347 So.2d 467, 470 at n. 8 (Fla. 1st DCA 1977), and Wyatt v. City of Pensacola, 196 So.2d 777 (Fla. 1st DCA 1967). We do not imply that need for housing may not be considered in the legislative process. Comprehensive planning is of such recent development that the reported cases do not form a basis for ironclad rules or criteria for legislative action.
The principle that legislative action will not be reversed by the courts where a reasonable basis or a "fairly debatable" basis exists for the legislative action is applicable to this type of zoning as it is to all other exercises of police power. The courts are aware that increasing population demands land use planning and that the reasonableness of such planning must be judged on the basis that such legislation is a restriction on the use by an owner of his land. Such restrictions are lawful only to the extent that the restriction is required by the needs of public welfare in general.
Tested by this yardstick, the finding of the trial court in the instant case is not shown to be erroneous.
Affirmed.
NOTES
[1] "(3) It is the intent of this act that its adoption is necessary so that local governments can preserve and enhance present advantages; encourage the most appropriate use of land, water, and resources, consistent with the public interest; overcome present handicaps; and deal effectively with future problems that may result from the use and development of land within their jurisdictions. Through the process of comprehensive planning, it is intended that units of local government can preserve, promote, protect, and improve the public health, safety, comfort, good order, appearance, convenience, law enforcement and fire prevention, and general welfare; prevent the overcrowding of land and avoid undue concentration of population; facilitate the adequate and efficient provision of transportation, water, sewerage, schools, parks, recreational facilities, housing, and other requirements and services; and conserve, develop, utilize, and protect natural resources within their jurisdictions."
[2] Mr. Wolff did not reapply in 1978.