400 So.2d 37 (1981)
TOWN OF INDIALANTIC, Brevard County, Florida, a Municipal Corporation, and Clayton Test, Jr., Mayor-Chairman, Gus Carey, Kay Kovac, Barbara Willey, and Charles Settgast, As Members of the Town Council, Town of Indialantic, Florida, Appellants,
v.
James H. NANCE, As Trustee, Appellee.
No. 80-389.
District Court of Appeal of Florida, Fifth District.
May 20, 1981.
Rehearing Denied June 23, 1981.
Edward J. Silberhorn of Reinman, Harrell, Silberhorn, Moule & Boyd, P.A., Melbourne, for appellants.
Joseph S. Gillin, Jr. of Storms, Krasny, Normile, Dettmer & Gillin, P.A., Melbourne, for appellee.
*38 COBB, Judge.
The Town of Indialantic (Indialantic) denied appellee Nance's request for a zoning variance based on hardship. A three-judge circuit court panel sitting in review of Indialantic's decision granted Nance's petition for certiorari and ordered Indialantic to grant the requested variance. Indialantic appeals the final judgment of the circuit court, and we reverse.
In July, 1978, Nance purchased Lots 8 and 9 of Indialantic-By-The-Sea, the two contiguous lots in question. The property was oceanfront property, bounded to the north by an existing three-story motel and to the south by six contiguous lots owed in whole or in part by Nance. The motel to the north, built before mean high-water and dune set-backs were required, is non-conforming to the extent that a portion of it lies east of the dune line. Over three hundred feet to the south on Lots 14 and 15, a contractual restriction required a motel to be built, if anything.
In August, 1978, Nance submitted a plan with Indialantic's Zoning Board, proposing construction of dual, three-story buildings. The two buildings were to provide a total of twenty-four dwelling units. Because of the plan's vagueness and also because it lacked the requisite number of off-street parking units, the Zoning Board rejected the plan suggesting that Nance file for a variance with Indialantic's Board of Adjustment.
Other than the parking deficiency, the dual three-story plan met all other Indialantic zoning requirements, including a thirty-five-foot height restriction. The Zoning Board was required to deny the site plan, however, because it lacked the authority to grant a variance as to the parking deficiency.
Instead of filing an application for a parking variance on the dual three-story proposal, Nance applied to the Board of Adjustment for a height and parking variance for a single six-story building. Though containing twenty-four dwelling units, the same as the original plan, the six-story proposal provided four less parking units than the already parking-deficient original plan. The Board of Adjustment rejected Nance's six-story plan, finding, among other things, that Nance had not demonstrated hardship, nor had he demonstrated the property at issue to be of an unusual nature.[1]
Nance appealed the Board's decision to Indialantic's Town Council.[2] During the Town Council hearing, Nance argued that Indialantic's set-back, breeze-way parking, and landscape requirements, the state coastal, set-back restriction,[3] the narrow shape of the subject property, the existence of the three-story motel to the north, and the requirement that a motel be built, if anything, three hundred feet to the south (on land also owned by Nance), combined to create such a hardship that he should be granted a height and parking variance. When questioned by council members, Nance admitted being aware of the thirty-five-foot height restriction at the time he purchased Lots 8 and 9. Nance's architect admitted that the single six-story building would be less expensive to construct than the dual, three-story version. The council unanimously rejected Nance's hardship contention, and denied the requested height and parking variances.[4]
Subsequent to the Town Council's rejection, Nance petitioned the Circuit Court of Brevard County for review of the council's decision.[5] The circuit court found that the height restriction combined with other Indialantic *39 zoning requirements to create an unusual and unnecessary hardship to Nance, and that the hardship was not self-created. Finding additionally that the variance requested did not violate any conditions or limitations to the granting of the variance,[6] the court reversed Indialantic's rejection of the six-story plan, and ordered Indialantic to grant Nance's application for variance. Indialantic petitioned this court for writ of certiorari to review the circuit court's decision; we treat the petition for certiorari as a timely notice of appeal.[7]
On appeal, Indialantic argues four points. Because of our holding today, it is unnecessary to consider the final three. Indialantic first argues that the Town Council's rejection of Nance's plan was "fairly debatable," requiring the circuit court below to affirm the Council's decision. Nance agrees that the "fairly debatable" standard is the correct test where an appellant seeks a zoning change or a change in use, but maintains the "fairly debatable" test does not apply when one seeks a variance from a zoning ordinance. Nance contends that the correct standard of review in this case is whether he, as variance seeker, established "unique or unnecessary hardship."
The "fairly debatable" rule is a rule of reasonableness; it answers the question of whether, upon the evidence presented to the municipal body, the municipality's action is reasonably based. Wolff v. Dade County, 370 So.2d 839 (Fla.3d DCA 1979), cert. denied, 379 So.2d 211 (Fla. 1979); Central Bank & Trust Co. v. Board of County Commissioners of Dade County, 340 So.2d 503 (Fla.3d DCA 1976), cert. denied, 354 So.2d 979 (Fla. 1977). The primary purpose of the "fairly debatable" test is to allocate decision-making authority over zoning matters between the legislative municipal body and the judiciary. J. Juergensmeyer and J. Wadley, Florida Zoning  Attacks and Defenses, § 4.2 (1980). See: Broward County v. Capeletti Brothers, Inc., 375 So.2d 313, 316 (Fla.4th DCA 1979), cert. denied, 385 So.2d 754 (Fla. 1980). The test purports to prevent the court from substituting its judgment with regard to zoning ordinance enactments for that of the zoning authority. 375 So.2d at 316; 370 So.2d at 842. In other words, the "fairly debatable" test was created to review the legislative-type enactments of zoning ordinances. Under the "fairly debatable" test, the reviewing court must uphold the ordinance so long as a reasonable basis exists to support the zoning ordinance (assuming no constitutional violations).
In a strict sense, then, Nance correctly argues that the "fairly debatable" test is limited to the review of a municipality's "legislative" zoning decisions. However, we do not agree with Nance's contention that the proper standard of review in zoning variance cases is "unique and unnecessary hardship."[8] Unique and unnecessary hardship cannot be a standard of review. It is the category, the end-result, in which the variance seeker attempts to place himself in order to qualify for the variance. A standard of review must supply the reviewing court with guidelines it can use to determine the propriety of the municipality's decision that classified the variance seeker as either a hardship or non-hardship. The propriety of the municipality's decision must be determined by examining the evidence presented to it; the standard of review establishes the quantum and quality of evidence that will make a zoning variance determination irreversible by the reviewing court. Utilizing unique and unnecessary hardship as a standard of review simply begs the question of whether the evidence presented to the municipal body reasonably demonstrated unique and unnecessary hardship. We decline to follow the majority holding in Allstate Mortgage Corp. of Florida v. City of Miami Beach, 308 So.2d 629 *40 (Fla.3d DCA 1975), cert. denied, 317 So.2d 763 (Fla. 1975), and agree with Judge Pearson's dissent in that case, which maintained that the proper standard of review in a zoning variance case is whether the lower tribunal had before it competent substantial evidence to support its findings. DeGroot v. Sheffield, 95 So.2d 912 (Fla. 1957).[9]
At issue in DeGroot was the proper method and scope of review of a quasi-judicial county board determination. 95 So.2d at 914. The DeGroot court held that where, as in the present case, notice and hearing are required and the judgment of the board is contingent on the showing made at the hearing, the action is judicial or quasi-judicial. Id. at 916. The DeGroot court further held that the proper method of review in such cases is by certiorari, and that the scope of review was limited:
The [reviewing] court merely examines the record made below to determine whether the lower tribunal had before it competent substantial evidence to support its findings and judgment which must also accord with the essential requirements of the law.
Id. at 916. The court then explained that "competent substantial evidence" was evidence a reasonable mind would accept as adequate to support a conclusion. Id. at 916.
The DeGroot "competent substantial evidence" standard of review of quasi-judicial action effectively provides the same standard the "fairly debatable" test provides for review of legislative municipal zoning action: For the action to be sustained, it must be reasonably based in the evidence presented. The two concepts have been blurred; for example, in Bell v. City of Sarasota, 371 So.2d 525 (Fla.2d DCA 1979), the court utilized both the competent substantial evidence standard and the "fairly debatable" standard to decide a zoning variance issue. In Bell, the city's board of adjustment granted the requested minimum land variance and the city sought review in the circuit court, alleging a lack of substantial competent evidence to sustain the board's finding; the circuit court reversed the grant. The Second District reversed the circuit court and reinstated the board's decision, finding substantial competent evidence to justify the board's action and finding the conflicting evidence also made the board's decision fairly debatable. 371 So.2d at 527.
By whatever name it is called, the task of the court reviewing a zoning variance decision is to insure that the authority's decision is based on evidence a reasonable mind would accept to support a conclusion. Compare DeGroot, 95 So.2d at 916, with Wolff v. Dade County, 370 So.2d at 841-842. If there was such evidence presented, the authority's determination must stand. Martin v. First Apostolic Church, 321 So.2d 471 (Fla.4th DCA 1975). A prerequisite to the granting of a hardship zoning variance is the presence of an exceptional and unique hardship to the individual landowner, unique to that parcel and not shared by other property owners in the area. City of Miami v. Franklin Leslie, Inc., 179 So.2d 622 (Fla.3d DCA 1965). In the instant case, the evidence reasonably supports Indialantic's conclusion that Nance did not suffer the requisite hardship. The lots at issue are typical of Indialantic oceanfront lots in size, shape and topography; the town's height, set-back, breezeway, parking, and landscape requirements, as well as the state coastal construction set-back restriction, apply equally to all beachfront property situated in Indialantic. Indialantic's zoning restrictions are common difficulties shared by all other oceanfront lot owners in the area, and are therefore not the unique hardship required to support a variance.
Additionally, Nance possessed a viable, dual, three-story plan that, with the exception of the parking deficiency, met all Indialantic *41 zoning requirements, including the height restriction. Nance never presented this plan to the Board of Adjustment, the body vested with the authority to grant such variance. The viability of this dual three-story plan itself illustrates a lack of hardship.
Nance, however, maintains that the motel to the north and the possibility of a motel being built three hundred feet to the south make his land unique. He contends that the non-conforming motel materially blocks the view to the north, and the possibility of a motel to the south threatens his view in that direction, and that this entitles him to a height variance. In ordering the variance to be granted, the circuit court placed central emphasis on the uniqueness of Nance's asserted lack of view.[10] We find the circuit court erred by considering the impaired view to be such a hardship that reversal of the determination by the Town Council was mandated as a matter of law. In the absence of some contractual or statutory obligation, a landowner has no absolute legal right to unobstructed air and light from the adjoining land. Fontainebleau Hotel Corp. v. Forty-Five Twenty-Five, Inc., 114 So.2d 357 (Fla.3d DCA 1959), cert. denied, 117 So.2d 842 (Fla. 1960).
The evidence before the Town Council reasonably supported its conclusion that Nance does not suffer the unique and unnecessary hardship required for the issuance of a variance. The circuit court erroneously substituted Indialantic's reasonable finding that Nance suffers no legal hardship with its own finding that he does. Absent an abuse of discretion or a clearly erroneous decision, Indialantic's decision should not have been set aside by the circuit court. Bell v. City of Sarasota, 371 So.2d 525 (Fla.2d DCA 1979); Alachua County v. Reddick, 368 So.2d 653 (Fla.1st DCA 1979); City of Naples v. Central Plaza of Naples, Inc., 303 So.2d 423 (Fla.2d DCA 1974). Such did not exist in the present case. We reverse the circuit court below and remand the case to it with directions to reinstate Indialantic's decision.
REVERSED and REMANDED with instructions.
DAUKSCH, C.J., and ORFINGER, J., concur.
NOTES
[1] Indialantic, Fla., Zoning Code § 28-102 (1977), gives the Board of Adjustment the authority to grant a variance in such cases where additional requirements are met.
[2] Appeal of Board decisions to the Town Council is provided by section 28-107, Indialantic Zoning Code (1977).
[3] § 161.053, Fla. Stat. (1977).
[4] Indialantic acted consistent with past beachfront height-variance denials: The Town had never previously granted a variance from the thirty-five-foot height restriction on beachfront property.
[5] Such review by certiorari is authorized by Article V, Section 5, of the Florida Constitution.
[6] Indialantic, Fla., Zoning Code § 28-102(2), (4) (1977).
[7] Fla.R.App.P. 9.040(b).
[8] In support of this position, Nance cites, Allstate Mortgage Corp. of Florida v. City of Miami Beach, 308 So.2d 629 (Fla.3d DCA 1975), cert. denied, 317 So.2d 763 (Fla. 1975). For the reasons discussed hereinafter, we reject this view.
[9] We note that the Allstate court failed to cite its own precedent of Shaughnessy v. Metropolitan Dade County, 238 So.2d 466 (Fla.3d DCA 1970), which used a combination "fairly debatable"/"competent substantial evidence" test to leave undisturbed the action of a county board that granted a special use. 238 So.2d at 468-469.
[10] In its decision, the circuit court stated:

The plight of [Nance] is due to unique circumstances and conditions in that he will be deprived of a view of the ocean because of the three-story structure extending to the dune line on the north and the motel restriction imposed on the property to the south. The difficulty or hardship of [Nance] is special or unique and perculiar [sic] to the application of the height restriction to his property and not general in character.