627 So.2d 469 (1993)
BOARD OF COUNTY COMMISSIONERS OF BREVARD COUNTY, FLORIDA, Petitioner,
v.
Jack R. SNYDER, et ux., Respondents.
No. 79720.
Supreme Court of Florida.
October 7, 1993.
Rehearing Denied December 23, 1993.
*470 Robert D. Guthrie, County Atty., and Eden Bentley, Asst. County Atty., Melbourne, for petitioner.
Frank J. Griffith, Jr., Cianfrogna, Telfer, Reda & Faherty, P.A., Titusville, for respondents.
Denis Dean and Jonathan A. Glogau, Asst. Attys. Gen., Tallahassee, amicus curiae, for Atty. Gen., State of FL.
Nancy Stuparich, Asst. Gen. Counsel, and Jane C. Hayman, Deputy Gen. Counsel, Tallahassee, amicus curiae, for FL League of Cities, Inc.
Paul R. Gougelman, III, and Maureen M. Matheson, Reinman, Harrell, Graham, Mitchell & Wattwood, P.A., Melbourne, amicus curiae, for Space Coast League of Cities, Inc., City of Melbourne, and Town of Indialantic.
Richard E. Gentry, FL Home Builders Ass'n, and Robert M. Rhodes and Cathy M. Sellers, Steel, Hector and Davis, Tallahassee, amicus curiae, for FL Home Builders Ass'n.
David La Croix, Pennington, Wilkinson & Dunlap, P.A., and William J. Roberts, Roberts and Eagan, P.A., Tallahassee, amicus curiae, for FL Ass'n of Counties.
David J. Russ and Karen Brodeen, Asst. Gen. Counsels, Tallahassee, amicus curiae, for FL Dept. of Community Affairs.
Richard Grosso, Legal Director, Tallahassee, and C. Allen Watts, Cobb, Cole and Bell, Daytona Beach, amicus curiae, for 1000 Friends of FL.
Neal D. Bowen, County Atty., Kissimmee, amicus curiae, for Osceola County.
M. Stephen Turner and David K. Miller, Broad and Cassel, Tallahassee, amicus curiae, for Monticello Drug Co.
John J. Copelan, Jr., County Atty., and Barbara S. Monahan, Asst. County Atty. for Broward County, Fort Lauderdale, and Emeline Acton, County Atty. for Hillsborough County, Tampa, amici curiae, for Broward County, Hillsborough County and FL Ass'n of County Attys., Inc.
Thomas G. Pelham, Holland & Knight, Tallahassee, amicus curiae, pro se.
GRIMES, Justice.
We review Snyder v. Board of County Commissioners, 595 So.2d 65 (Fla. 5th DCA 1991), because of its conflict with Schauer v. City of Miami Beach, 112 So.2d 838 (Fla. 1959); City of Jacksonville Beach v. Grubbs, 461 So.2d 160 (Fla. 1st DCA 1984), review denied, 469 So.2d 749 (Fla. 1985); and Palm Beach County v. Tinnerman, 517 So.2d 699 (Fla. 4th DCA 1987), review denied, *471 528 So.2d 1183 (Fla. 1988). We have jurisdiction under article V, section 3(b)(3) of the Florida Constitution. Jack and Gail Snyder owned a one-half acre parcel of property on Merritt Island in the unincorporated area of Brevard County. The property is zoned GU (general use) which allows construction of a single-family residence. The Snyders filed an application to rezone their property to the RU-2-15 zoning classification which allows the construction of fifteen units per acre. The area is designated for residential use under the 1988 Brevard County Comprehensive Plan Future Land Use Map. Twenty-nine zoning classifications are considered potentially consistent with this land use designation, including both the GU and the RU-2-15 classifications.
After the application for rezoning was filed, the Brevard County Planning and Zoning staff reviewed the application and completed the county's standard "rezoning review worksheet." The worksheet indicated that the proposed multifamily use of the Snyders' property was consistent with all aspects of the comprehensive plan except for the fact that it was located in the one-hundred-year flood plain in which a maximum of only two units per acre was permitted. For this reason, the staff recommended that the request be denied.
At the planning and zoning board meeting, the county planning and zoning director indicated that when the property was developed the land elevation would be raised to the point where the one-hundred-year-flood plain restriction would no longer be applicable. Thus, the director stated that the staff no longer opposed the application. The planning and zoning board voted to approve the Snyders' rezoning request.
When the matter came before the board of county commissioners, Snyder stated that he intended to build only five or six units on the property. However, a number of citizens spoke in opposition to the rezoning request. Their primary concern was the increase in traffic which would be caused by the development. Ultimately, the commission voted to deny the rezoning request without stating a reason for the denial.
The Snyders filed a petition for certiorari in the circuit court. Three circuit judges, sitting en banc, reviewed the petition and denied it by a two-to-one decision. The Snyders then filed a petition for certiorari in the Fifth District Court of Appeal.
The district court of appeal acknowledged that zoning decisions have traditionally been considered legislative in nature. Therefore, courts were required to uphold them if they could be justified as being "fairly debatable." Drawing heavily on Fasano v. Board of County Commissioners, 264 Or. 574, 507 P.2d 23 (1973), however, the court concluded that, unlike initial zoning enactments and comprehensive rezonings or rezonings affecting a large portion of the public, a rezoning action which entails the application of a general rule or policy to specific individuals, interests, or activities is quasi-judicial in nature. Under the latter circumstances, the court reasoned that a stricter standard of judicial review of the rezoning decision was required. The court went on to hold:
(4) Since a property owner's right to own and use his property is constitutionally protected, review of any governmental action denying or abridging that right is subject to close judicial scrutiny. Effective judicial review, constitutional due process and other essential requirements of law, all necessitate that the governmental agency (by whatever name it may be characterized) applying legislated land use restrictions to particular parcels of privately owned lands, must state reasons for action that denies the owner the use of his land and must make findings of fact and a record of its proceedings, sufficient for judicial review of: the legal sufficiency of the evidence to support the findings of fact made, the legal sufficiency of the findings of fact supporting the reasons given and the legal adequacy, under applicable law (i.e., under general comprehensive zoning ordinances, applicable state and case law and state and federal constitutional provisions) of the reasons given for the result of the action taken.
(5) The initial burden is upon the landowner to demonstrate that his petition or application for use of privately owned *472 lands, (rezoning, special exception, conditional use permit, variance, site plan approval, etc.) complies with the reasonable procedural requirements of the ordinance and that the use sought is consistent with the applicable comprehensive zoning plan. Upon such a showing the landowner is presumptively entitled to use his property in the manner he seeks unless the opposing governmental agency asserts and proves by clear and convincing evidence that a specifically stated public necessity requires a specified, more restrictive, use. After such a showing the burden shifts to the landowner to assert and prove that such specified more restrictive land use constitutes a taking of his property for public use for which he is entitled to compensation under the taking provisions of the state or federal constitutions.
Snyder v. Board of County Commissioners, 595 So.2d at 81 (footnotes omitted).
Applying these principles to the facts of the case, the court found (1) that the Snyders' petition for rezoning was consistent with the comprehensive plan; (2) that there was no assertion or evidence that a more restrictive zoning classification was necessary to protect the health, safety, morals, or welfare of the general public; and (3) that the denial of the requested zoning classification without reasons supported by facts was, as a matter of law, arbitrary and unreasonable. The court granted the petition for certiorari.
Before this Court, the county contends that the standard of review for the county's denial of the Snyders' rezoning application is whether or not the decision was fairly debatable. The county further argues that the opinion below eliminates a local government's ability to operate in a legislative context and impairs its ability to respond to public comment. The county refers to Jennings v. Dade County, 589 So.2d 1337 (Fla. 3d DCA 1991), review denied, 598 So.2d 75 (Fla. 1992), for the proposition that if its rezoning decision is quasi-judicial, the commissioners will be prohibited from obtaining community input by way of ex parte communications from its citizens. In addition, the county suggests that the requirement to make findings in support of its rezoning decision will place an insurmountable burden on the zoning authorities. The county also asserts that the salutary purpose of the comprehensive plan to provide controlled growth will be thwarted by the court's ruling that the maximum use permitted by the plan must be approved once the rezoning application is determined to be consistent with it.
The Snyders respond that the decision below should be upheld in all of its major premises. They argue that the rationale for the early decisions that rezonings are legislative in nature has been changed by the enactment of the Growth Management Act. Thus, in order to ensure that local governments follow the principles enunciated in their comprehensive plans, it is necessary for the courts to exercise stricter scrutiny than would be provided under the fairly debatable rule. The Snyders contend that their rezoning application was consistent with the comprehensive plan. Because there are no findings of fact or reasons given for the denial by the board of county commissioners, there is no basis upon which the denial could be upheld. Various amici curiae have also submitted briefs in support of their several positions.
Historically, local governments have exercised the zoning power pursuant to a broad delegation of state legislative power subject only to constitutional limitations. Both federal and state courts adopted a highly deferential standard of judicial review early in the history of local zoning. In Village of Euclid v. Ambler Realty Co., 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926), the United States Supreme Court held that "[i]f the validity of the legislative classification for zoning purposes be fairly debatable, the legislative judgment must be allowed to control." 272 U.S. at 388, 47 S.Ct. at 118. This Court expressly adopted the fairly debatable principle in City of Miami Beach v. Ocean & Inland Co., 147 Fla. 480, 3 So.2d 364 (1941).
Inhibited only by the loose judicial scrutiny afforded by the fairly debatable rule, local zoning systems developed in a markedly inconsistent manner. Many land use experts and practitioners have been critical of the local zoning system. Richard Babcock deplored the effect of "neighborhoodism" and *473 rank political influence on the local decision-making process. Richard F. Babcock, The Zoning Game (1966). Mandelker and Tarlock recently stated that "zoning decisions are too often ad hoc, sloppy and self-serving decisions with well-defined adverse consequences without off-setting benefits." Daniel R. Mandelker and A. Dan Tarlock, Shifting the Presumption of Constitutionality in Land-Use Law, 24 Urb.Law. 1, 2 (1992).
Professor Charles Harr, a leading proponent of zoning reform, was an early advocate of requiring that local land use regulation be consistent with a legally binding comprehensive plan which would serve long range goals, counteract local pressures for preferential treatment, and provide courts with a meaningful standard of review. Charles M. Harr, "In Accordance With A Comprehensive Plan," 68 Harv.L.Rev. 1154 (1955). In 1975, the American Law Institute adopted the Model Land Development Code, which provided for procedural and planning reforms at the local level and increased state participation in land use decision-making for developments of regional impact and areas of critical state concern.
Reacting to the increasing calls for reform, numerous states have adopted legislation to change the local land use decision-making process. As one of the leaders of this national reform, Florida adopted the Local Government Comprehensive Planning Act of 1975. Ch. 75-257, Laws of Fla. This law was substantially strengthened in 1985 by the Growth Management Act. Ch. 85-55, Laws of Fla.
Pursuant to the Growth Management Act, each county and municipality is required to prepare a comprehensive plan for approval by the Department of Community Affairs. The adopted local plan must include "principles, guidelines, and standards for the orderly and balanced future economic, social, physical, environmental, and fiscal development" of the local government's jurisdictional area. Section 163.3177(1), Fla. Stat. (1991). At the minimum, the local plan must include elements covering future land use; capital improvements generally; sanitary sewer, solid waste, drainage, potable water, and natural ground water aquifer protection specifically; conservation; recreation and open space; housing; traffic circulation; intergovernmental coordination; coastal management (for local government in the coastal zone); and mass transit (for local jurisdictions with 50,000 or more people). Id., § 163.3177(6).
Of special relevance to local rezoning actions, the future land use plan element of the local plan must contain both a future land use map and goals, policies, and measurable objectives to guide future land use decisions. This plan element must designate the "proposed future general distribution, location, and extent of the uses of land" for various purposes. Id., § 163.3177(6)(a). It must include standards to be utilized in the control and distribution of densities and intensities of development. In addition, the future land use plan must be based on adequate data and analysis concerning the local jurisdiction, including the projected population, the amount of land needed to accommodate the estimated population, the availability of public services and facilities, and the character of undeveloped land. Id., § 163.3177(6)(a).
The local plan must be implemented through the adoption of land development regulations that are consistent with the plan. Id. § 163.3202. In addition, all development, both public and private, and all development orders approved by local governments must be consistent with the adopted local plan. Id., § 163.3194(1)(a). Section 163.3194(3), Florida Statutes (1991), explains consistency as follows:
(a) A development order or land development regulation shall be consistent with the comprehensive plan if the land uses, densities or intensities, and other aspects of development permitted by such order or regulation are compatible with and further the objectives, policies, land uses, and densities or intensities in the comprehensive plan and if it meets all other criteria enumerated by the local government.
Section 163.3164, Florida Statutes (1991), reads in pertinent part:
(6) "Development order" means any order granting, denying, or granting with conditions an application for a development permit.

*474 (7) "Development permit" includes any building permit, zoning permit, subdivision approval, rezoning, certification, special exception, variance, or any other official action of local government having the effect of permitting the development of land.
Because an order granting or denying rezoning constitutes a development order and development orders must be consistent with the comprehensive plan, it is clear that orders on rezoning applications must be consistent with the comprehensive plan.
The first issue we must decide is whether the Board's action on Snyder's rezoning application was legislative or quasi-judicial. A board's legislative action is subject to attack in circuit court. Hirt v. Polk County Bd. of County Comm'rs, 578 So.2d 415 (Fla. 2d DCA 1991). However, in deference to the policy-making function of a board when acting in a legislative capacity, its actions will be sustained as long as they are fairly debatable. Nance v. Town of Indialantic, 419 So.2d 1041 (Fla. 1982). On the other hand, the rulings of a board acting in its quasi-judicial capacity are subject to review by certiorari and will be upheld only if they are supported by substantial competent evidence. De Groot v. Sheffield, 95 So.2d 912 (Fla. 1957).
Enactments of original zoning ordinances have always been considered legislative. Gulf & Eastern Dev. Corp. v. City of Fort Lauderdale, 354 So.2d 57 (Fla. 1978); County of Pasco v. J. Dico, Inc., 343 So.2d 83 (Fla. 2d DCA 1977). In Schauer v. City of Miami Beach, this Court held that the passage of an amending zoning ordinance was the exercise of a legislative function. 112 So.2d at 839. However, the amendment in that case was comprehensive in nature in that it effected a change in the zoning of a large area so as to permit it to be used as locations for multiple family buildings and hotels. Id. In City of Jacksonville Beach v. Grubbs and Palm Beach County v. Tinnerman, the district courts of appeal went further and held that board action on specific rezoning applications of individual property owners was also legislative. Grubbs, 461 So.2d at 163; Tinnerman, 517 So.2d at 700.
It is the character of the hearing that determines whether or not board action is legislative or quasi-judicial. Coral Reef Nurseries, Inc. v. Babcock Co., 410 So.2d 648 (Fla. 3d DCA 1982). Generally speaking, legislative action results in the formulation of a general rule of policy, whereas judicial action results in the application of a general rule of policy. Carl J. Peckingpaugh, Jr., Comment, Burden of Proof in Land Use Regulations: A Unified Approach and Application to Florida, 8 Fla.St.U.L.Rev. 499, 504 (1980). In West Flagler Amusement Co. v. State Racing Commission, 122 Fla. 222, 225, 165 So. 64, 65 (1935), we explained:
A judicial or quasi-judicial act determines the rules of law applicable, and the rights affected by them, in relation to past transactions. On the other hand, a quasi-legislative or administrative order prescribes what the rule or requirement of administratively determined duty shall be with respect to transactions to be executed in the future, in order that same shall be considered lawful. But even so, quasi-legislative and quasi-executive orders, after they have already been entered, may have a quasi-judicial attribute if capable of being arrived at and provided by law to be declared by the administrative agency only after express statutory notice, hearing and consideration of evidence to be adduced as a basis for the making thereof.
Applying this criterion, it is evident that comprehensive rezonings affecting a large portion of the public are legislative in nature. However, we agree with the court below when it said:
[R]ezoning actions which have an impact on a limited number of persons or property owners, on identifiable parties and interests, where the decision is contingent on a fact or facts arrived at from distinct alternatives presented at a hearing, and where the decision can be functionally viewed as policy application, rather than policy setting, are in the nature of ... quasi-judicial action... .
Snyder, 595 So.2d at 78. Therefore, the board's action on Snyder's application was in the nature of a quasi-judicial proceeding and *475 properly reviewable by petition for certiorari.[1]
We also agree with the court below that the review is subject to strict scrutiny. In practical effect, the review by strict scrutiny in zoning cases appears to be the same as that given in the review of other quasi-judicial decisions. See Lee County v. Sunbelt Equities, II, Ltd. Partnership, 619 So.2d 996 (Fla.2d DCA 1993) (The term "strict scrutiny" arises from the necessity of strict compliance with comprehensive plan.). This term as used in the review of land use decisions must be distinguished from the type of strict scrutiny review afforded in some constitutional cases. Compare Snyder v. Board of County Comm'rs, 595 So.2d 65, 75-76 (Fla. 5th DCA 1991) (land use), and Machado v. Musgrove, 519 So.2d 629, 632 (Fla. 3d DCA 1987), review denied, 529 So.2d 693 (Fla. 1988), and review denied, 529 So.2d 694 (Fla. 1988) (land use), with In re Estate of Greenberg, 390 So.2d 40, 42-43 (Fla. 1980) (general discussion of strict scrutiny review in context of fundamental rights), appeal dismissed, 450 U.S. 961, 101 S.Ct. 1475, 67 L.Ed.2d 610 (1981), Florida High Sch. Activities Ass'n v. Thomas, 434 So.2d 306 (Fla. 1983) (equal protection), and Department of Revenue v. Magazine Publishers of America, Inc., 604 So.2d 459 (Fla. 1992) (First Amendment).
At this point, we depart from the rationale of the court below. In the first place, the opinion overlooks the premise that the comprehensive plan is intended to provide for the future use of land, which contemplates a gradual and ordered growth. See City of Jacksonville Beach, 461 So.2d at 163, in which the following statement from Marracci v. City of Scappoose, 552 P.2d 552, 553 (Or. Ct. App. 1976), was approved:
[A] comprehensive plan only establishes a long-range maximum limit on the possible intensity of land use; a plan does not simultaneously establish an immediate minimum limit on the possible intensity of land use. The present use of land may, by zoning ordinance, continue to be more limited than the future use contemplated by the comprehensive plan.
Even where a denial of a zoning application would be inconsistent with the plan, the local government should have the discretion to decide that the maximum development density should not be allowed provided the governmental body approves some development that is consistent with the plan and the government's decision is supported by substantial, competent evidence.
Further, we cannot accept the proposition that once the landowner demonstrates that the proposed use is consistent with the comprehensive plan, he is presumptively entitled to this use unless the opposing governmental agency proves by clear and convincing evidence that specifically stated public necessity requires a more restricted use. We do not believe that a property owner is necessarily entitled to relief by proving consistency when the board action is also consistent with the plan. As noted in Lee County v. Sunbelt Equities II, Limited Partnership:
[A]bsent the assertion of some enforceable property right, an application for rezoning appeals at least in part to local officials' discretion to accept or reject the applicant's argument that change is desirable. The right of judicial review does not ipso facto ease the burden on a party seeking to overturn a decision made by a local government, and certainly does not confer any property-based right upon the owner where none previously existed.
... .
Moreover, when it is the zoning classification that is challenged, the comprehensive plan is relevant only when the suggested use is inconsistent with that plan. Where any of several zoning classifications is consistent with the plan, the applicant seeking a change from one to the other is not entitled to judicial relief absent proof the status quo is no longer reasonable. It is not enough simply to be "consistent"; the proposed change cannot be inconsistent, and will be subject to the "strict *476 scrutiny" of Machado to insure this does not happen.
619 So.2d at 1005-06.
This raises a question of whether the Growth Management Act provides any comfort to the landowner when the denial of the rezoning request is consistent with the comprehensive plan. It could be argued that the only recourse is to pursue the traditional remedy of attempting to prove that the denial of the application was arbitrary, discriminatory, or unreasonable. Burritt v. Harris, 172 So.2d 820 (Fla. 1965); City of Naples v. Central Plaza of Naples, Inc., 303 So.2d 423 (Fla. 2d DCA 1974). Yet, the fact that a proposed use is consistent with the plan means that the planners contemplated that that use would be acceptable at some point in the future. We do not believe the Growth Management Act was intended to preclude development but only to insure that it proceed in an orderly manner.
Upon consideration, we hold that a landowner seeking to rezone property has the burden of proving that the proposal is consistent with the comprehensive plan and complies with all procedural requirements of the zoning ordinance. At this point, the burden shifts to the governmental board to demonstrate that maintaining the existing zoning classification with respect to the property accomplishes a legitimate public purpose. In effect, the landowners' traditional remedies will be subsumed within this rule, and the board will now have the burden of showing that the refusal to rezone the property is not arbitrary, discriminatory, or unreasonable. If the board carries its burden, the application should be denied.
While they may be useful, the board will not be required to make findings of fact. However, in order to sustain the board's action, upon review by certiorari in the circuit court it must be shown that there was competent substantial evidence presented to the board to support its ruling. Further review in the district court of appeal will continue to be governed by the principles of City of Deerfield Beach v. Vaillant, 419 So.2d 624 (Fla. 1982).
Based on the foregoing, we quash the decision below and disapprove City of Jacksonville Beach v. Grubbs and Palm Beach County v. Tinnerman, to the extent they are inconsistent with this opinion. However, in the posture of this case, we are reluctant to preclude the Snyders from any avenue of relief. Because of the possibility that conditions have changed during the extended lapse of time since their original application was filed, we believe that justice would be best served by permitting them to file a new application for rezoning of the property. The application will be without prejudice of the result reached by this decision and will allow the process to begin anew according to the procedure outlined in our opinion.
It is so ordered.
BARKETT, C.J., and OVERTON, McDONALD, KOGAN and HARDING, JJ., concur.
SHAW, J., dissents.
NOTES
[1] One or more of the amicus briefs suggests that Snyder's remedy was to bring a de novo action in circuit court pursuant to section 163.3215, Florida Statutes (1991). However, in Parker v. Leon County, 627 So.2d 476 (Fla. 1993), we explained that this statute only provides a remedy for third parties to challenge the consistency of development orders.