676 So.2d 532 (1996)
MARTIN COUNTY, Florida, a Political Subdivision of the State of Florida, Appellant/Cross-Appellee,
v.
SECTION 28 PARTNERSHIP, LTD., a Florida Limited Partnership, Appellee/Cross-Appellant.
No. 94-2243.
District Court of Appeal of Florida, Fourth District.
July 17, 1996.
*534 Susan L. Trevarthen, Nancy E. Stroud and Edward F. Ryan of Burke, Weaver & Prell, Boca Raton; Noreen S. Dreyer and Gary K. Oldehoff of Martin County Attorney's Office, Stuart, for appellant/cross-appellee.
Marcella Larsen and Charles Siemon of Siemon, Larsen & Marsh, Boca Raton, for appellee/cross-appellant.
Terrell K. Arline, Tallahassee, for Amicus Curiae Florida Department of Community Affairs.

ON MOTION FOR REHEARING, CLARIFICATION AND CERTIFICATION
STEVENSON, Judge.
We grant appellee's motion for rehearing and clarification of our opinion filed February 28, 1996 and substitute the following opinion in its place. We deny the motion for certification.
This is an appeal from a final order of the trial court granting injunctive relief and monetary damages for alleged violations of substantive due process and the takings clauses of both the state and federal constitutions. The trial court's order is based on Martin County's denial of a series of applications for amendments to its comprehensive growth management plan designed to accommodate a proposed Planned Unit Development which would have increased zoning densities in a square mile of land. We reverse the final judgment.
We quash the injunctive relief ordered on the basis of Martin County's refusal to amend its comprehensive plan and future land use map and the consequent denial of the development application because the trial court failed to apply the proper "fairly debatable" standard; we quash the injunctive relief and vacate the damages awarded for violations of substantive due process for the reasons discussed herein; we reverse the damages awarded based on a "taking" because the claim was not ripe.
Appellant, Section 28 Partnership, LTD, ("the Partnership") sought approval to develop a mixed use, golf course community in a section of land ("Section 28") located in the southern portion of Martin County. Section 28 is situated immediately east and south of Jonathan Dickinson State Park. Jonathan Dickinson is a nature preserve that is approximately 15 times the size of Section 28; it is an important environmental resource and contains a rich diversity of wildlife.
The Martin County comprehensive plan for planning and land development regulation, adopted pursuant to the 1985 Growth Management Act, Chapter 163Part II, Florida Statutes, designates all properties bordering on Jonathan Dickinson State Park as either rural (one dwelling unit per two acres), agricultural (one dwelling unit per twenty acres) or agricultural ranchette (one dwelling unit per five acres). In addition, under the comprehensive plan, property is either designated "primary urban service district," "secondary urban service district," or is outside any urban service district. The urban services district designation of a property determines its priority within the county for the provision of urban infrastructure and services. Section 28 is situated outside any urban service district and does not presently qualify for the provision of public utilities necessary for development.
The Partnership sought a change in the zoning requirements and an amendment to the comprehensive plan which would permit approval of a Planned Unit Development *535 ("PUD") allowing up to two residential units per acre (land use designation of "Estate Residential"), a golf course, a clubhouse and a "village center" with a projected 50,000 square feet of retail and office space. Approval of the application would require an amendment to Martin County's comprehensive land use plan so that public water, sewer and other urban facilities necessary for development could be provided by adjoining Palm Beach County. To accomplish this end, the Partnership proposed that the plan be amended to provide for a new urban service category designated as "Adjacent County Urban Service Area" ("ACUSA"), wherein certain property could be developed using services from an adjacent county.
Following a series of public hearings, Martin County denied the requested amendment to the land use designations on the map of the comprehensive plan and denied the request to establish a new ACUSA urban services district. Actually, the county simply refused to engage the steps mandated by the Growth Management Act which would be necessary to amend its adopted comprehensive plan. See § 163.3184, Fla. Stat. (1993). These steps generally include the local government's submission of the proposed amendment to the Department of Community Affairs for its review to determine whether the change is consistent with the statewide growth management plan. Following receipt of a report and recommendation from the Department of Community Affairs, the local government then decides whether it should adopt the amendment to its comprehensive plan. §§ 163.3184(9)-(10) & 163.3187, Fla. Stat. (1993). Because the comprehensive plan amendments were denied, the Commission did not consider or vote on the application for PUD rezoning or for the requested rezoning to Commercial Office/Residential to accommodate the proposed village center. The approval of the PUD and its necessary rezonings would have been inconsistent with the comprehensive plan.
The trial court found that Martin County's denial of the Partnership's development request for Section 28 involved the application of adopted policy. Then, the trial court went on to find that the Martin County Board of County Commissioners' refusal to grant the applications for development approval and the continued application of the land use designations to Section 28 (agriculture, agricultural ranchette and rural) was arbitrary and capricious. The trial court enjoined Martin County from enforcing any development regulations on Section 28 more restrictive than one dwelling unit per acre and enjoined Martin County from impeding any installation of water and sewer for Section 28. The trial court directed Martin County to approve the Partnership's application as submitted "just as if the Board of County Commissioners had amended the Martin County Comprehensive Growth Management Plan to designate Section 28 in a land use classification which would permit one dwelling unit per acre and to designate Section 28 as a part of the primary urban service district." The trial court awarded the Partnership $100,000 in damages for violation of its substantive due process rights under the state and federal constitutions and $100,000 in damages for the taking of its property without just compensation.
The trial court's finding that the denial of the application for development approval involved the application of adopted policy necessarily led the court to view the county's decision as a quasijudicial action subject to review under the strict judicial scrutiny standard rather than the deferential "fairly debatable" standard applicable to legislative actions. See Board of County Comm'rs of Brevard County v. Snyder, 627 So.2d 469 (Fla.1993). We hold that the trial court committed reversible error because it was obliged to review Martin County's denial of the Partnership's application for an amendment to the comprehensive growth management plan and future land use map under the fairly debatable standard. Section 28 Partnership, Ltd. v. Martin County, 642 So.2d 609 (Fla. 4th DCA 1994), rev. denied, 654 So.2d 920 (Fla.1995) (hereinafter referred to as "Section 28 Partnership I"). Because the trial court applied the incorrect standard of review in its evaluation of Martin County's actions, we are unable to properly perform our review function of the trial court's order. Accordingly, remand is necessary so that the trial court may render a *536 decision on the county's denial of the development application using the appropriate review standard.
In fairness to the trial court, we point out that it rendered its final judgment without the benefit of our decision in Section 28 Partnership I. The trial court's final order was rendered on July 1, 1994, and the decision in Section 28 Partnership I was issued on September 9, 1994. In Section 28 Partnership I, the Partnership sought certiorari review of the county's refusal to amend its comprehensive plan and approve the development application. The circuit court denied certiorari relief and the Partnership petitioned for writ of certiorari to this court. The panel denied certiorari and held that "the decision of the county, declining to amend the plan, was legislative rather than quasi-judicial, and that the trial court did not err in concluding that certiorari was not available." 642 So.2d at 609. Because the county's actions were legislative in nature and involved matters of policy, review under the fairly debatable standard was required. Id. at 612. Snyder.
In reaching the conclusion that Martin County's refusal to grant the Partnership's application was legislative in nature, this court focused not only on the point that approval would require an amendment to the comprehensive plan, but also on the peculiar nature of the property and its surrounding areas:
This land is situated at the headquarters of the Loxahatchee River, which has been designated as a National Wild and Scenic River by the National Park Service. It is also bordered on two sides, north and west, by Jonathan Dickinson State Park, a nature preserve. Although the size of this section of land (a square mile), in and of itself, does not necessarily determine whether the amendment would be legislative, this property is bordered on two sides by Jonathan Dickinson State Park and the Loxahatchee River Preserve area. Considering the pristine nature of the land in the park and around the river, the size of the park, and the use of it by the public, we conclude that the changes sought here involve matters of policy, subject to review under the fairly debatable standard ...
Section 28 Partnership I, 642 So.2d at 610, 612. We find that the present record verifies the conclusions reached in Section 28 Partnership I pertaining to the legislative character of the county's refusal to grant the application.[1]
With regard to the trial court's ruling that Martin County wrongfully denied the Partnership's request for rezoning in order to facilitate its proposed PUD, we note that the court in Snyder held that:
[A] landowner seeking to rezone property has the burden of proving that the proposal is consistent with the comprehensive plan and complies with all procedural requirements of the zoning ordinance. At this point, the burden shifts to the government board to demonstrate that maintaining the existing zoning classification with respect to the property accomplishes a legitimate public purpose. In effect, the landowners' traditional remedies will be subsumed within this rule, and the board will now have the burden of showing that the refusal to rezone the property is not arbitrary, discriminatory, or unreasonable. If the board carries its burden, the application should be denied.
627 So.2d at 476. It was undisputed that the Partnership's proposed PUD and accompanying request for rezoning were not consistent with Martin County's comprehensive plan. Accordingly, the Partnership never *537 met its initial burden under Snyder and therefore, the burden never shifted to the county to show that the refusal to rezone was not arbitrary, discriminatory or unreasonable.
Turning to the Partnership's substantive due process argument, we find that the issues concerning these claims and Martin County's refusal to amend its comprehensive plan and the consequent denial of the development application are inextricably intertwined. Indeed, after formulating the test to be applied when a landowner seeks to challenge the denial of a rezoning request, the court in Synder stated that the "landowners' traditional remedies will be subsumed within this rule." 627 So.2d at 476. The term "traditional remedies" refers to the landowner's "attempt to prove that the denial of the application was arbitrary, discriminatory or unreasonable"or put another way, the landowner's attempt to show a violation of substantive due process. Id.
Accordingly, it appears likely that the trial court could have applied the incorrect legal standard in ruling on the substantive due process claim as well as on the rezoning claim. Therefore, we conclude that the interests of justice would best be served if these issues were resolved at the same time and during the same proceeding to eliminate the possibility of legally inconsistent results. We vacate that part of the judgment awarding damages and injunctive relief for violation of substantive due process and remand for a new hearing. See Passaat, Ltd. v. Bettis, 654 So.2d 980 (Fla. 4th DCA 1995)(a party is entitled to have his case judged under a correct standard of proof). By this opinion, we do not mean to suggest or imply that the result reached by the trial court could not have been reached with application of the proper standard of proof.
We reverse the trial court's damage award of $100,000 for an unlawful "taking" predicated on the county's conditional requirement of a 300-foot environmental buffer area along the boundaries of Jonathan Dickinson State Park prior to approval of any proposed development of the property. We point out that the requirement for a 300-foot environmental buffer (within which land uses would be restricted to "recreational preserve" or golf course use) is somewhat illusory because this proviso was nothing more than a conditional staff recommendation to the Martin County Board of County Commissioners, assuming that the PUD was approved in other respects. In any event, this issue has been rendered moot because the PUD was not approved and we have, in this opinion, reversed the trial court's ruling directing the county to approve the PUD.
Further, even if the trial court's "takings" damage award can be interpreted as applying to all of Martin County's underlying land use regulations applicable to Section 28, the award still could not be sustained. It is a fair summary of the law that in "takings" cases involving permit denials and other land use restrictions, the landowner must meet the difficult burden of establishing that: (1) the regulation denies substantially all economically beneficial or productive use of the land; (2) alternative uses were applied for and conclusively denied by the regulatory body; and (3) at least one meaningful application has been filed under the existing regulations. See Tinnerman v. Palm Beach County, 641 So.2d 523 (Fla. 4th DCA 1994); City of Pompano Beach v. Yardarm Restaurant, Inc., 641 So.2d 1377, 1384 (Fla. 4th DCA 1994), rev. denied, 651 So.2d 1197 (Fla.1995); Penn Cent. Transp. Co. v. City of New York, 438 U.S. 104, 136-37, 98 S.Ct. 2646, 2665-666, 57 L.Ed.2d 631 (1978). The Partnership's proof falls short as a matter of law in each category in the instant case. Evidence at trial indicated that there were reasonable economic uses available for Section 28 (including farming and large lot single family home development) and even more importantly, the Partnership had not sought development of the property under the existing regulations so that the extent of the alleged taking, if any, could be quantified.
Therefore, we conclude that any "takings" claim based upon the cumulative effect of the underlying zoning regulations and comprehensive plan restrictions, as applied to Section 28, is simply not ripe for review. As this court stated in Taylor v. *538 Village of North Palm Beach, 659 So.2d 1167, 1173 (Fla. 4th DCA 1995):
A governmental entity must arrive at a "final, definitive position," Williamson County Regional Planning Comm'n v. Hamilton Bank, 473 U.S. 172, 191, 105 S.Ct. 3108, 3119, 87 L.Ed.2d 126, 141 (1985), on the "nature and extent" of permitted development before a court may adjudicate the "constitutionality of the regulations that purport to limit it." MacDonald, Sommer & Frates [v. Yolo County], 477 U.S. [340] at 351 [106 S.Ct. 2561, 2567, 91 L.Ed.2d 285 (1986)]. Florida courts have adopted the federal ripeness policy of requiring a "final determination from the government as to the permissible uses of the property." Glisson [v. Alachua County], 558 So.2d [1030] at 1035-36 [Fla. 1st DCA 1990]; Department of Envtl. Reg. v. MacKay, 544 So.2d 1065, 1066 (Fla. 1989); City of Jacksonville v. Wynn, 650 So.2d 182, 186-188 (Fla. 1st DCA 1995); Lee County v. Morales, 557 So.2d 652 (Fla. 2nd DCA) review denied, 564 So.2d 1086 (Fla.1990). A final determination requires at least one meaningful application. Glisson, 558 So.2d at 1035. As we recently noted, "[r]ipeness requires a firm delineation of permitted uses so that the extent of the taking can be analyzed." Tinnerman v. Palm Beach County, 641 So.2d 523, 526 (Fla. 4th DCA 1994).
Accordingly, the damages awarded by the trial court are reversed and the injunctive relief is quashed. We remand this cause to the trial court for further proceedings consistent with this opinion. Additional hearings may be held and evidence taken at the discretion of the trial court. We have also examined the issues raised in the cross-appeal and find that they are without merit.
REVERSED and REMANDED.
GUNTHER, C.J., and DELL, J., concur.
NOTES
[1] However, we hasten to echo this court's opinion in Martin County v. Yusem, 664 So.2d 976 (Fla.4th DCA 1995), on rehearing, 20 Fla. L. Weekly D2574 (Fla. 4th DCA Nov. 22, 1995), and caution that not all requests to amend comprehensive plans will necessarily be considered legislative. In Yusem, this court held that the landowner's request for the county to amend the future land use map to increase the density on his 54 acre tract would have limited impact on the public and that the action taken by the county regarding the amendment would therefore be quasi-judicial. Citing to Florida Institute of Technology v. Martin County, 641 So.2d 898, 900 (Fla. 4th DCA 1994), rev. denied, 651 So.2d 1195 (Fla.1995), the court also noted that the board hearing was narrow and "essentially addressed the change in the land use designation for a particular piece of property."