766 So.2d 1097 (2000)
ST. JOHNS COUNTY, etc., Petitioner,
v.
Donald R. SMITH and R. Lee Smith, Respondents.
No. 5D99-3341.
District Court of Appeal of Florida, Fifth District.
August 11, 2000.
Rehearing Denied September 27, 2000.
*1098 Patrick F. McCormack and Richard A. Barfield, St. Augustine, for Petitioner.
J. Stephen Alexander, St. Augustine, for Respondents.
W. SHARP, J.
St. Johns County (by its Board of County Commissioners) seeks certiorari review in this court of the order rendered by the circuit court in certiorari proceedings below, which directed the County Commission to grant Donald R. and R. Lee Smith's application for a modification to a PUD which included a solid waste transfer facility as a permitted use. We grant the writ.
The parcel of land involved in this proceeding is an 89-acre PUD for the Cumberland Industrial Park. It had been initially zoned "open rural," which would not have permitted solid waste transfer stations. The PUD provided for "all essential public services including waste, sewer, gas substations, lift stations, treatment plants and similar installations." But it also provided the PUD would not adversely affect the health and safety of residents, would not be detrimental to the natural environment, and would "accomplish a more desirable environment than would be possible through the strict application of the zoning code."
The County staff approved the modification, provided the solid waste transfer facility was dropped. The Board of County Commissioners held two hearings on the application, and at both indicated concerns about the transfer station. At the hearing at issue in this proceeding, which was held January 26, 1999, county staff recommended approval of the application, provided the transfer station was deleted because the transfer station was not compatible with the existing residential and light industrial commercial development surrounding the parcel. Two witnesses testified as experts on the negative-use aspects of a transfer station and why it would not be compatible with the light manufacturing or processing uses allowed in the PUD.[1]
*1099 During the hearing, some members of the County Commission voiced concerns over the effect of the transfer station on the County's solid waste franchise system. However, counsel advised that their decision should be based on testimony indicating the proposed transfer station use was or was not compatible with the PUD, and whether the proposed modification would accomplish a more desirable environment within the PUD. The County Commission concluded that the heavy industrial nature of the proposed station would not provide:
[A]n environment of stable character compatible with the surrounding residential area and it does not accomplish a more desirable environment than would be possible through the strict application of the minimum requirements of the zoning ordinances.
The Smiths pursued their review remedies by filing a petition for writ of certiorari with the St. Johns County Circuit Court.[2] Judge Richard Weinberg held a hearing on September 27, 1999, which was not reported. After the hearing, the Smiths filed an affidavit which offered a compromise: they would restrict the proposed transfer station to "non-putrescible and non-hazardous construction and demolition debris," until or unless the owner of the transfer station became a solid waste contractor ("franchisee") for the County. The County objected on the ground that certiorari review is limited to the record made at the County Commission hearing below.
The circuit judge ordered the County Commission to consider the issue of the offer of compromise at a subsequent hearing. The parties orally agreed to request a stay in the case to see if County staff could bring the new offer back to the County Commission.
On October 8, 1999, the judge held a second hearing and heard arguments concerning the new offer of compromise. The County continued to object. The Smiths agreed Judge Weinberg could not properly review the offer, but that it should go back to the County Commission for consideration. The judge ruled he was remanding the cause so that the Smiths could supplement the record.
On October 19, 1999, the County Commission voted not to join the Smiths' request for a remand, but to wait until the cause was remanded and then, if necessary, file a petition for writ of certiorari in this court. The circuit judge was so notified.
At that point the circuit judge issued an order granting the petition for writ of certiorari. He remanded the cause to the County Commission with directions to approve the application for modification, which included the transfer station, based on the compromise offer. The judge found, in summary, that the Smiths' burden under Snyder[3] to demonstrate that the proposed request was consistent with the comprehensive plan was met by the staff report, and that the witness, John Schwab, did not provide any substantial competent evidence about the proposed transfer station because he was not a registered engineer. The judge also mistakenly considered *1100 the Commission's 4-to-1 vote as an actual vote on October 19, 1999, on the application as revised by the compromise offer. In fact, however, neither party considered the October 19, 1999, presentation to the County Commission to be a hearing and neither side presented any evidence and no vote was taken on the revised application.
It appears that the Smiths were seeking a major modification to the PUD. Section 8-2-4(B) of the St. Johns Zoning Code provides:

Major Adjustments to Ordinance Creating a PUD. The developer of lands zoned PUD may apply for major adjustments to plans approved as part of the Ordinance creating a PUD, and such application shall proceed and be processed in the same manner as standard rezoning applications....
Board of County Commissioners of Brevard County v. Snyder, 627 So.2d 469 (Fla.1993), sets forth the controlling rules concerning burden of proof and quality of evidence in such zoning cases. In specific, Snyder holds that a landowner seeking to rezone property has the burden of proving his proposal is consistent with the comprehensive plan, after which the burden shifts to the Board of County Commissioners to show that maintaining the existing zoning accomplishes a legitimate public purpose. If the burden shifts, the County must show there was substantial competent evidence presented to the Commission to support its action. Id. at 476.
In overturning the Commission's decision, the circuit court made two legal errors in regard to Snyder. First, the burden was not properly shifted in this case to the County Commission, because the Smiths offered no proof that their proposal was consistent with the comprehensive plan.[4] The circuit court relied on the county staff report which initially approved the complete proposal. However that staff report was effectively superseded. The staff's recommendation in the record before the Commission approved the proposal only if the transfer station was omitted.
Second, even if the burden shifted under Snyder to the Commission, it appears the circuit court substituted its evaluation of the evidence for that of the Commission's, and in so doing, departed from the essential requirements of law. See Florida Power & Light Co. v. City of Dania, 761 So.2d 1089 (Fla.2000). The circuit court stated it was rejecting the Commission's decision because of an absence of competent substantial evidence to support it. However, the basis for this, as evidenced by its opinion, was the circuit court's total reweighing and rejection of the testimony given by John Schwab and Tim Brown.
The circuit court in this case also erred in two other regards. First, it should not have considered the offer of compromise made by the Smiths subsequent to the Commission hearing under review, as well as the post-hearing staff presentation to the County Commission in October of 1999. First City Sav. Corp. of Texas v. S & B Partners, 548 So.2d 1156 (Fla. 5th DCA 1989). In formulating its ruling, the circuit court was limited to the record made in the zoning hearing under review. Second, a circuit court cannot remand with directions following review by certiorari. See Gulf Oil Realty Co. v. Windhover Ass'n, 403 So.2d 476 (Fla. 5th DCA 1981); City of Miramar v. Amoco Oil Co., 524 So.2d 506 (Fla. 4th DCA 1988); Eden Park Village, 699 So.2d 334, 335 (Fla. 5th DCA 1997).
Petition for Writ of Certiorari GRANTED; Order QUASHED.
COBB J., concurs.
HARRIS, J., dissents with opinion.
HARRIS, J., dissenting.
I respectfully dissent.
The action of St. Johns County challenged herein was quasi-judicial in that it *1101 represented a policy application rather than a policy setting. See Board of County Comm'rs of Brevard County v. Snyder, 627 So.2d 469 (Fla.1993). Its action is therefore subject to strict scrutiny. Once the landowners proved (as they did) that the use sought is consistent with the comprehensive plan and complies with all procedural requirements of the zoning ordinance, the County had the burden of demonstrating that the denial of the application would accomplish a legitimate public purpose. See Florida Power & Light Co. v. City of Dania, 761 So.2d 1089 (Fla. 2000).
The problem with this case, inherent any time a governmental body with a conflicting interest acts as a quasi-judicial body, is the appearance, if not the fact, of impropriety. If a judge owned the only service station in town, he would be expected to recuse himself in an action involving rezoning for a competing station. This record indicates that the County had concerns about how the requested transfer station might affect its own solid waste transfer system and who might be expected to use the proposed transfer station (the County was cautioned by its attorneys that it could not base its decision on these concerns).[1] As important as these concerns were to the County, they were irrelevant to the merits of the application. But how do you recuse the County Commission? After conducting a "Snyder" hearing, the County denied the proposed use with the stated reasons that it would not be compatible with the surrounding residential area and that granting the use would be environmentally undesirable.
The trial judge determined that there was no competent, substantial evidence in the record to support the County's stated reasons for denial. The court rejected the testimony of the County's employees as being, in effect, legally insufficient. The judge pointed out on more than one occasion his concern that in reaching its decision, the County relied on the testimony of its employees. While this is normally the case in most zoning disputes, and is usually of no concern, it becomes a perplexing problem when the governmental body has indicated a preferred outcome not based on the merits of the application. Look at the County's concern about the effect on the "surrounding residential area." The trial court pointed out that the County's witness on this point had never visited the site of the proposed plant. This was of considerable concern to the court since the aerial map showed no residential areas within a mile of the property. Significantly, no homeowners appeared in opposition to the application. Regarding the County's concern about the environmental impact of the proposed use, the County failed to demonstrate how appellant's proposed operation would be any more environmentally unsound than the county's own operation (the County had operated "residential" solid waste transfer stations next to residential areas for years and, in fact, had a new transfer station about to "come on line"[2]).
*1102 When, as here, it appears that the governmental body may be motivated to deny an application for reasons other than its merits, the court should carefully examine the record to assure itself that the petitioner received a fair and impartial hearing. The trial judge herein did just that. It appears from the trial court's order granting certiorari that it believed that the County was improperly attempting to justify a pre-determined decision to deny the application rather than conduct the good faith, fair hearing required by Snyder. Further, he concluded that there was no way to assure an impartial hearing on this subject before this quasi-judicial body and, since the record would not justify a denial in any event, directed that the application be approved. I would deny certiorari.
NOTES
[1] John Schwab, Director of Solid Waste for the County, testified about the effect of a transfer station. Although not an engineer, he was qualified to testify by virtue of his twenty years experience in working for local government solid waste programs; in operating landfills; in his State of Florida certification as a landfill operator; and in finding proper sites for transfer stations. He testified that a transfer station would create excessive noise, odor, heavy traffic flow, leachate, and wind-blown litter. He said commercial waste which is brought to a transfer station may contain hazardous wastes. The County's second witness, Tim Brown, Principal Planner for St. Johns County's Planning Department, is a Certified Planner and holds a Masters Degree in Public Administration. Brown testified that the size of a facility applied for is of importance in making a zoning decision. A large facility like the one in the application, as indicated by the 150 truck trips per day suggested in the application, may have an overly negative effect in terms of odor, noise, traffic (as compared to a smaller facility).
[2] Fla. R. Civ. P. 1.630.
[3] Board of County Comm'rs of Brevard County v. Snyder, 627 So.2d 469 (Fla.1993).
[4] See First Baptist Church of Perrine v. Miami-Dade County, 768 So.2d 1114 (Fla. 3d DCA 2000).
[1] The County Attorney advised the Commission as follows:

I think that the Board should not consider the effect of this transferof a potential transfer station anywhere in the County on, for example, our own franchise system.
* * *
And, also, were it to make sort of an intermediate stop, the solid waste starts outside the County, it comes into the County on a truckin one type of truck, goes through a transfer station, gets loaded on a larger, you know, long distance truck and goes out. I would submit that I agree with Mr. Alexander, you should not consider that in your opinion.
This advice was given because of the inordinate interest shown by the Board's questions on these issues.
[2] The County also had conducted a waste collection operation on Nine Mile Road which, unlike the Petitioner's proposed operation which would be wholly enclosed within a building, was a "40 yard open top container" which, according to the County's witness, "had the potential" to leak. In determining the County's real reason for turning down the application, the trial judge was required to determine whether the expressed concern was a legitimate reaction to a fair and impartial hearing or whether he was observing crocodile tears from a kangaroo court. The judge's order makes clear what he determined.