788 So.2d 204 (2001)
COASTAL DEVELOPMENT OF NORTH FLORIDA, INC., etc., et al., Petitioners,
v.
CITY OF JACKSONVILLE BEACH, Respondent.
No. SC95686.
Supreme Court of Florida.
April 12, 2001.
T. Geoffrey Heekin, S. Hunter Malin and Eric L. McAliley of Bartlett & Heekin, P.A., Jacksonville, FL, for Petitioners.
*205 William S. Graessle of Winegeart & Graessle, P.A.; and Stephen Stratford, Jacksonville, FL, for Respondent.
Donna E. Blanton of Steel, Hector & Davis LLP, Tallahassee, FL, for Florida Home Builders Association, Amicus Curiae.
WELLS, C.J.
We have for review a decision on the following question certified to be of great public importance:
ARE DECISIONS REGARDING SMALL-SCALE DEVELOPMENT AMENDMENTS PURSUANT TO SECTION 163.3187(1)(c), FLORIDA STATUTES, LEGISLATIVE IN NATURE AND, THEREFORE, SUBJECT TO THE FAIRLY DEBATABLE STANDARD OF REVIEW; OR QUASI-JUDICIAL, AND SUBJECT TO STRICT SCRUTINY?
City of Jacksonville Beach v. Coastal Development of North Florida, Inc., 730 So.2d 792 (Fla. 1st DCA 1999). We have jurisdiction. See art. V, § 3(b)(4), Fla. Const. For the reasons expressed below, we answer the certified question by holding that the small-scale development amendment decisions made pursuant to section 163.3187(1)(c), Florida Statutes (Supp.1996), are decisions which are legislative in nature and subject to the "fairly debatable" standard of review.[1] We approve the decision below.

PROCEDURAL HISTORY
Coastal Development of North Florida, Inc. (Developers), applied to the City of Jacksonville Beach (City) for a small-scale development amendment to the City's comprehensive plan pursuant to section 163.3187(1)(c), Florida Statutes (Supp. 1996).[2] Developers wanted to commercially develop 1.7 acres of a parcel of land they own in the City. The proposed amendment sought to change the site's designation on the City's future land use map from "Residential-Low Density" to "Commercial Professional Office." The Jacksonville Beach City Council followed the recommendation of the City's Planning Commission and denied the proposed amendment. Developers petitioned the circuit court for a writ of certiorari and, alternatively, commenced an action for declaratory and injunctive relief.
The circuit court[3] observed that in Martin County v. Yusem, 690 So.2d 1288 (Fla. 1997), this Court held that comprehensive plan amendment decisions by a local government are legislative in nature, but that *206 court also noted that we specifically declined to determine whether small-scale development amendments were as well.[4] The circuit court then acknowledged our opinion in Board of County Commissioners v. Snyder, 627 So.2d 469, 476 (Fla. 1993), in which we held zoning changes of limited impact are quasi-judicial in nature subject to "strict scrutiny" review.[5] The circuit court likened small-scale development amendments to rezoning requests and thus concluded that Snyder applied to this category of developments.[6]
The circuit court concluded, as a matter of law, that: (1) a local government acts in a quasi-judicial rather than legislative manner when acting on small-scale development amendment requests; (2) on review, quasi-judicial decisions are subject to strict scrutiny and must be supported in the record by competent, substantial evidence; and (3) certiorari review is appropriate to review quasi-judicial decisions made by local governments. Applying the strict scrutiny standard, the circuit court found that the City's action was not supported by competent, substantial evidence. Thus, the circuit court granted the petition for certiorari, quashed the City's decision denying the Developers' application, and ordered the City to grant Developers' application. The City petitioned the First District Court of Appeal for second-tier certiorari review.
On review in the First District, the First District granted the City's petition for the writ and held that decisions regarding small-scale development requests made pursuant to section 163.3187(1)(c) are legislative decisions. See Coastal Development, 730 So.2d at 794-95. Thus, the First District held review of such decisions is by a de novo action in the circuit court subject to the deferential "fairly debatable" standard of review. See id. The First District reasoned that all comprehensive plan amendment requests involve policy formation rather than application because all comprehensive plan amendment requests, regardless of size, require the governmental entity to determine whether it is socially desirable to reformulate policy. See id. at 794. The First District also found that this Court in Yusem desired to bring predictability to this area of law by mandating a uniform approach to all comprehensive plan amendment requests. See id. Accordingly, the First District granted the petition for certiorari, reversed the circuit court, remanded the case for a de novo hearing on the Developers' alternative action for declaratory and injunctive relief, and certified the question to this Court. See id. This review follows.

ANALYSIS
In Yusem, we described the process for amending a local government's *207 comprehensive plan, and we also noted the involvement of the Department of Community Affairs (Department) in this process. Yusem, 690 So.2d at 1294-95. The Department is the designated state land planning agency[7] under the Local Government Comprehensive Planning and Land Development Regulation Act (the Act).[8] The amendment process entails, among other things, an integrated review process involving a mandatory review by the Department. See Yusem, 690 So.2d at 1294. A local government must conduct two advertised public hearings on each proposed amendment prior to its adoption.[9] A local government may only amend its comprehensive plan twice a year.[10]
The process of adopting small-scale development amendments is somewhat different. Section 163.3187(1)(c) describes the process of proposing and adopting a small-scale development amendment. Unlike regular comprehensive plan amendments, small-scale development amendments only require one reading for adoption by the local government,[11] are not constrained by the two-amendments-per-year rule,[12] and are not subject to mandatory review by the Department.[13] Administrative review still exists in which "any affected person" may challenge the adopted amendment for compliance with the Act.[14] The Department has standing to intervene in these administrative hearings.[15]
Proposals eligible for treatment as small-scale development amendments are limited to properties that, among other things: are ten acres or fewer; have not been subject to an amendment within the previous year; are no closer than 200 feet from any property of the same owner granted a change within the previous year; and are not located within an area of critical state concern.[16] A local government is limited to a cumulative acre limit per year of total area within that government's boundaries that may be subject to small-scale amendments.[17] A small-scale amendment may not involve a change to the textual goals, policies, or objectives of the comprehensive plan.[18]
A comprehensive plan is composed of several elements.[19] One element of the comprehensive plan is the future land use *208 element.[20] The future land use element designates "proposed future general distribution, location, and extent of the uses of land for residential uses, commercial uses, industry, agriculture, recreation, conservation, education, public buildings and grounds, other public facilities, and other categories of the public and privates uses of land."[21] The future land use map (FLUM) is a component of the future land use element of the comprehensive plan. See Yusem, 690 So.2d at 1292. The FLUM is a pictorial depiction of the future land use element and is supplemented by written "goals, policies, and measurable objectives."[22] The FLUM must be internally consistent with the other elements of the comprehensive plan.[23]
In Yusem, we held that all comprehensive plan amendments are legislative decisions. See Yusem, 690 So.2d at 1295. At that time, we expressly declined to pass upon small-scale development amendments, as that issue was not before us. See id. at 1293 n. 6. Subsequent to our decision in Yusem, four of the five district courts have held that small-scale development amendments are legislative in nature and subject to the fairly-debatable standard of review.[24]
We based our holding in Yusem on several factors. First, we concluded that because the original adoption of the comprehensive plan by a local government was a legislative act, it naturally followed that a proposed modification of that comprehensive plan was likewise legislative in nature. See id. at 1294. Second, the integrated review process by several levels of government indicates that an action on a comprehensive plan amendment is a policy decision. See id. Third, section 163.3184(10)(a) mandates that the fairly-debatable standard of review applies in an administrative hearing to determine compliance with the Act. See id. at 1295. Fourth, the holding would remove uncertainty and promote uniformity in the land use law context. See id. We conclude that same reasoning applies here, and we see no reason to deviate from it.
Developers contend that a primary distinction between small-scale developments and the developments covered by Yusem is that small-scale developments involve changes to the FLUM which do not alter the textual goals, policies, and objectives of a local government's comprehensive plan and are thereby more similar to zoning applications covered by Snyder. We do not agree. Rather, we find the following analysis to be persuasive:
[A]mendments to a legislatively adopted statement of general policy are legislative acts. Even if the comprehensive plan amendment consists of an amendment to the comprehensive plan's future land use map which is applicable only to a single tract of land, the amendment should be deemed legislative. The future land use plan map alone does not determine or control the uses which can be made of a particular tract of land. Rather, the comprehensive plan as a whole, including the future land use map *209 and all of the other policies of the plan, consists of legislative policies that must be applied to determine what uses can be made of a specific tract of land.
Thomas G. Pelham, Quasi-Judicial Rezonings: A Commentary on the Snyder Decision and the Consistency Requirement, 9 J. Land Use & Envtl. L., 243, 300-301 (1994).
The FLUM is part of the comprehensive plan and represents a local government's fundamental policy decisions. Any proposed change to that established policy likewise is a policy decision. The FLUM itself is a policy decision. A decision that would amend the FLUM requires those policies to be reexamined, even though that change is consistent with the textual goals and objectives of the comprehensive plan. Therefore, the scope of the proposed change is irrelevant because any proposed change to the FLUM requires a reexamination of those policy considerations and not an application of those policies.
By its very nature, a proposed amendment to the FLUM, as an element of the comprehensive plan, requires policy reformulation because the amendment seeks a change to the FLUM. However, a proposed zoning change under Snyder must be consistent with the FLUM, thus requiring policy application instead of policy reformulation. See Snyder, 627 So.2d at 475. The First District noted the distinction between policy reformulation and application. We approve the First District's thoughtful opinion on this point:
It seems to us that all comprehensive plan amendment requests necessarily involve the formulation of policy, rather than its mere application. Regardless of the scale of the proposed development, a comprehensive plan amendment request will require that the governmental entity determine whether it is socially desirable to reformulate the policies previously formulated for the orderly future growth of the community. This will, in turn, require that it consider the likely impact that the proposed amendment would have on traffic, utilities, other services, and future capital expenditures, among other things. That is, in fact, precisely what occurred here. Such considerations are different in kind from those which come into play in considering a rezoning request.
Coastal Development, 730 So.2d at 794 (emphasis added).
The lack of mandatory Department oversight does not alter our conclusion. While small-scale development amendments do not undergo the extensive integrated review process we described in Yusem, there are still administrative remedies available to any aggrieved party in the small-scale development amendment context that are not available in the zoning context.[25] The Department may also intervene in these administrative hearings. See § 163.3187(3)(a), Fla. Stat. (Supp.1996). Additionally, our conclusion in this case reinforces our policy underlying Yusem, which was to promote uniformity and certainty in land use planning decisions. See Yusem, 690 So.2d at 1295.
As we stated in Yusem, a party challenging a local government's decision on a comprehensive plan amendment should file an original action in the circuit court and not a petition for certiorari. See Yusem, 690 So.2d at 1295. The circuit judge, in his order granting certiorari, made an alternative finding that, even if *210 the fairly-debatable standard applied, the City failed to meet that burden in this case. However, the circuit court's conclusion on this point was improper because the circuit court made this finding only upon a review of the record and not in a de novo action. Thus, remand is proper to allow the circuit court to proceed with the Developers' alternative action for declaratory and injunctive relief.

CONCLUSION
We answer the certified question by holding that small-scale development amendments sought pursuant to section 163.3187(1)(c) are legislative decisions which are subject to the fairly-debatable standard of review. A challenge to a local government's decision on a small-scale development amendment may be commenced as an original action in the circuit court. We approve the decision under review and remand with directions that the circuit court proceed on the Developers' alternative action for declaratory and injunctive relief in a manner consistent with this opinion.
It is so ordered.
SHAW, HARDING, ANSTEAD, PARIENTE, LEWIS and QUINCE, JJ., concur.
NOTES
[1] As we said in Martin County v. Yusem, 690 So.2d 1288 (Fla.1997):

The fairly debatable standard of review is a highly deferential standard requiring approval of a planning action if reasonable persons could differ as to its propriety. In other words, an ordinance may be said to be fairly debatable when for any reason it is open to dispute or controversy on grounds that make sense or point to a logical deduction that in no way involves its constitutional validity.
Id. at 1295 (citations and initial quotation marks removed).
[2] Section 163.3187(1)(c) establishes conditions under which local governments may adopt comprehensive plan amendments that are directly related to proposed small-scale development activities.
[3] It appears that pursuant to procedures in the Fourth Judicial Circuit, a single circuit judge presides over first-tier certiorari review. The number of circuit judges presiding over first-tier certiorari review is not uniform throughout Florida's circuit courts. Some circuits have three-judge panels for such review. We recently referred the question of whether there should be a uniform procedure for first-tier certiorari review to the Rules of Judicial Administration Committee of The Florida Bar. See Florida Power & Light Co. v. City of Dania, 761 So.2d 1089, 1094 (Fla.2000).
[4] In footnote 6 of Yusem, we said:

We do note that in 1995, the legislature amended section 163.3187(1)(c), Florida Statutes, which provides special treatment for comprehensive plan amendments directly related to proposed small-scale development activities. Ch. 95-396, § 5, Laws of Fla. We do not make any findings concerning the appropriate standard of review for these small-scale development activities.
Yusem, 690 So.2d at 1293 n. 6.
[5] This Court in Snyder stated that strict scrutiny in the land use context must be distinguished from constitutional strict scrutiny. In the land use context, strict scrutiny generally means strict compliance with the comprehensive plan. See Snyder, 627 So.2d at 475.
[6] While we disagree with his conclusion, Circuit Judge Charles O. Mitchell, Jr., is commended for his thorough analysis provided in his order granting certiorari. See Coastal Development of North Florida, Inc. v. City of Jacksonville Beach, No. 97-000079-AP (Fla. 4th Cir. Ct., order dated June 30, 1998).
[7] See § 163.3164(20), Fla. Stat. (1995).
[8] See §§ 163.3161-.3243, Fla. Stat. (1995), et. seq.
[9] See § 163.3184(15)(b), Fla. Stat. (Supp. 1996).
[10] See § 163.3187(1), Fla. Stat. (Supp.1996).
[11] See § 163.3187(1)(c)3., Fla. Stat. (Supp. 1996).
[12] See § 163.3187(1)(c), Fla. Stat. (Supp. 1996).
[13] See § 163.3187(3)(a), Fla. Stat. (Supp. 1996).
[14] See § 163.3187(3)(a), Fla. Stat. (Supp. 1996).
[15] See § 163.3187(3)(a), Fla. Stat. (Supp. 1996).
[16] See § 163.3187(1)(c)1., Fla. Stat. (Supp. 1996).
[17] See § 163.3187(1)(c)1.a., Fla. Stat. (Supp. 1996).
[18] See § 163.3187(1)(c)1.d., Fla. Stat. (Supp. 1996). Section 163.3187(1)(c)1.d. states:

The proposed amendment does not involve a text change to the goals, policies, and objectives of the local government's comprehensive plan, but only proposes a land use change to the future land use map for a site-specific small scale development activity.
[19] See § 163.3177, Fla. Stat. (Supp.1996).
[20] See § 163.3177(6), Fla. Stat. (Supp.1996).
[21] § 163.3177(6)(a), Fla. Stat. (Supp.1996).
[22] § 163.3177(6)(a), Fla. Stat. (Supp.1996).
[23] See § 163.3177(2), Fla. Stat. (Supp.1996).
[24] See Minnaugh v. County Comm'n of Broward County, 752 So.2d 1263 (Fla. 4th DCA 2000), review granted, No. SC00-875, 773 So.2d 56 (Fla.2000); Palm Springs Gen. Hosp., Inc. v. City of Hialeah Gardens, 740 So.2d 596 (Fla. 3d DCA 1999); City of Jacksonville Beach v. Coastal Dev. of North Florida, Inc., 730 So.2d 792 (Fla. 1st DCA 1999); Fleeman v. City of St. Augustine Beach, 728 So.2d 1178 (Fla. 5th DCA 1998).
[25] Section 163.3187(3)(a) confers standing in these administrative hearings to any "affected person" as broadly defined by section 161.3184(1)(a), without the need to allege an injury. Conversely, when challenging a zoning decision, an affected person must allege an injury. See § 163.3215, Fla. Stat. (1995).