828 So.2d 1029 (2002)
The TOWN OF MANALAPAN, Petitioner,
v.
Joe GYONGYOSI, Eva Gyongyosi, Adam Bankier, Theodore Von Voigtlander, Jane Von Voigtlander and Alan Miller, Respondents.
No. 4D01-2879.
District Court of Appeal of Florida, Fourth District.
September 4, 2002.
Rehearing Denied November 8, 2002.
*1030 John Beranek of Ausley & McMullen, Tallahassee, for petitioner.
Nathan E. Nason of Nason, Yeager, Gerson, White & Lioce, P.A., West Palm Beach, for respondents Joe and Eva Gyongyosi.
WARNER, J.
The Town of Manalapan petitions for certiorari review of a circuit court appellate opinion that reversed the Town's denial of respondents' application to amend the zoning code to permit them to build docks on their property. We grant the Town's petition.
In 1997, respondents, four property owners in the Town of Manalapan, requested that Manalapan's Zoning Code be amended to allow docks on their respective properties. The property is currently zoned "R2-A" and is the only district within Manalapan not permitting docks. At least 139 other lots, as well as the adjacent condominium complex, are zoned for docks. In fact, respondents are the only lakefront homes in Manalapan for which docks have not been permitted.
The lots consist of a narrow strip of land along Lake Worth completely covered by mangroves. The lot owners' homes front on the Atlantic Ocean. Between the homes and the lots on Lake Worth lie the Town Hall of Manalapan and State Road A1A. The Town contends that the four lots are not similarly situated to the other properties on which docks are permitted due to the foregoing characteristics as well as the property's history. In 1978, respondents' predecessor in title, Roy Talmo, deeded to the Town the Town Hall property. That deed was part of a complex transaction whereby the Town rezoned Talmo's (now respondents') property to permit construction of five townhouses and one single family dwelling on property that otherwise would permit construction of only one dwelling. The lots, after rezoning, were half the width of other lots in the area. At the time, the property was zoned to permit docks but was later changed to prohibit docks on these lots as part of the entire agreement to develop the oceanside of Talmo's property in a significantly more intensive development. Instead of lots with a minimum of 150 feet of frontage, the lots had 75 feet of frontage.
Pursuant to respondents' application, the Zoning Commission recommended the current zoning be maintained and not to permit the docks. The Town held a hearing on the matter, at which experts for both respondents and the Town testified. Respondents' expert testified that docks in district R2-A were consistent with the Comprehensive Plan and that no legitimate public purpose was served in prohibiting docks on respondents' four properties.
The Town's expert, on the other hand, testified that prohibiting docks on these four unique parcels was consistent with the Town's Comprehensive Plan. He pointed to sections of the plan requiring the Town to consider the effect docking changes would have on other properties. Protecting the view of other existing residents was thus a consideration under the plan, as the plan contemplated that not all waterfront property would have dockage. The Town's expert did acknowledge that dock facilities may not be inconsistent with the plan, depending upon the Town's evaluation of their effect on other permitted uses. However, he ultimately testified, "now I feel in this instance that the information that I've read and the history of the property *1031 shows me that it is inconsistent to allow it [the docks], that not allowing the docks is consistent with the comp plan as the best choice, if, given the fact that these are the criteria and the data and the information I've read and heard so far." In other words, if the Town found that prohibiting docks was necessary to protect nearby properties, then under the plan, "it is consistent to maintain the prohibition and in which case it would be inconsistent to allow it."
The Town's expert also asserted "aesthetics" as a legitimate public purpose for prohibiting docks on the four lots. Specifically, the dock prohibition protects the views of the adjoining property owners. Two owners' views would be seriously impacted by the construction of docks, and the president of the adjacent cooperative of villas testified that the whole shoreline in front of the villas would be impacted by the construction of docks.
Other adjacent property owners testified at the hearing regarding the effect the docks would have on their properties. One owner testified that he had been assured that no docks would be constructed on respondents' property.
Finally, respondent, Mr. Gyongyosi, testified that mangroves existed all the way across the portion of the lot on Lake Worth.
After taking the matter under consideration, the Town Commission ultimately denied the application to rezone the property to permit docks. The Town made no findings of fact. Respondents brought a certiorari petition to the circuit court in its appellate capacity. After briefing, the court issued its opinion, ruling as follows:
Competent substantial evidence exists in the record to support the Petitioners' [respondents here] assertion that allowing docks in the R2-A zoning district is consistent with the local comprehensive plan. Moreover, the four single family homes found in the R-2A zoning district are the only Manalapan residences that are prohibited from the construction of docks. Conversely, the record does not contain competent substantial evidence to support the Town Commission's allegations that the prohibition against docks in the R2-A zoning district serves a legitimate public purpose. Therefore, the Town Commission failed to meet its burden of showing that the refusal to rezone the property was not arbitrary, discriminatory, or unreasonable.
The court alternatively ruled that the prohibition constituted "reverse spot zoning." The court thereupon granted the writ, quashed the Town's ruling, and remanded the case to the Town Commission "for the development of reasonable restrictions on the construction of docks on Petitioners' [respondents here] properties."
In Board of County Commissioners of Brevard County v. Snyder, 627 So.2d 469 (Fla.1993), the court established the procedures for challenging a quasi-judicial zoning decision. In discussing the situation where a landowner proves the proposed zoning change is consistent with the plan but the board action in denying a change may also be consistent with the plan, the court concluded that the landowner is not presumptively entitled to relief. See id. at 475-76. The court quoted with approval from Lee County v. Sunbelt Equities, II, Ltd. Partnership, 619 So.2d 996, 1005-06 (Fla. 2d DCA 1993):
[W]hen it is the zoning classification that is challenged, the comprehensive plan is relevant only when the suggested use is inconsistent with that plan. Where any of several zoning classifications is consistent with the plan, the applicant seeking a change from one to the other is not *1032 entitled to judicial relief absent proof the status quo is no longer reasonable.
The Snyder court then held:
Upon consideration, we hold that a landowner seeking to rezone property has the burden of proving that the proposal is consistent with the comprehensive plan and complies with all procedural requirements of the zoning ordinance. At this point, the burden shifts to the governmental board to demonstrate that maintaining the existing zoning classification with respect to the property accomplishes a legitimate public purpose. In effect, the landowners' traditional remedies will be subsumed within this rule, and the board will now have the burden of showing that the refusal to rezone the property is not arbitrary, discriminatory, or unreasonable. If the board carries its burden, the application should be denied.
While they may be useful, the board will not be required to make findings of fact. However, in order to sustain the board's action, upon review by certiorari in the circuit court it must be shown that there was competent substantial evidence presented to the board to support its ruling.
627 So.2d at 476.
Certiorari review of a board's decision must be in accord with City of Deerfield Beach v. Vaillant, 419 So.2d 624, 626 (Fla. 1982), which established a two-tier review of such decisions. In the "first-tier" review, a party may seek certiorari review in the circuit court, which is more akin to an appeal and is not discretionary. See Dusseau v. Metro. Dade County Bd. of County Comm'rs, 794 So.2d 1270, 1273-74 (Fla.2001); Fla. Power & Light Co. v. City of Dania, 761 So.2d 1089, 1092 (Fla.2000). The court must review the record from the commission decision and determine whether: (1) procedural due process has been afforded; (2) whether the essential requirements of law have been observed; and (3) whether competent substantial evidence supports the commission's judgment. See Vaillant, 419 So.2d at 626. The "competent substantial evidence" standard of review applied to this first-tier review "is tantamount to legally sufficient evidence." Fla. Power & Light, 761 So.2d at 1092. On certiorari petition to the district court, "second-tier" review, that court is limited to determining whether procedural due process has been afforded and whether the circuit court applied the correct law. See Vaillant, 419 So.2d at 626. It is not allowed to determine whether the commission decision is supported by competent substantial evidence. See Fla. Power & Light, 761 So.2d at 1093. As the Florida Power & Light court stated, "[a]s a practical matter, the circuit court's final ruling in most first-tier cases is conclusive, for second-tier review is extraordinarily limited." Id. at 1092.
In Fla. Power & Light, the circuit court, on first-tier review, had actually "decided anew whether the homeowners had shown by competent substantial evidence" that the special exception requested in that case was deficient. Id. at 1093. The circuit court ruling on its face revealed that the court examined the record and determined that the homeowners "failed to show by competent substantial evidence that such use [was inconsistent with the Dania Code]." Id. The supreme court noted that "[u]nder Vaillant, the circuit court was constrained to determine simply whether the Commission's decision was supported by competent substantial evidence." Id.
Dusseau further explains the circuit court's role:
We reiterate that the "competent substantial evidence" standard cannot be used by a reviewing court as a mechanism *1033 for exerting covert control over the policy determinations and factual findings of the local agency. Rather, this standard requires the reviewing court to defer to the agency's superior technical expertise and special vantage point in such matters. The issue before the court is not whether the agency's decision is the "best" decision or the "right" decision or even a "wise" decision, for these are technical and policy-based determinations properly within the purview of the agency. The circuit court has no training or experienceand is inherently unsuitedto sit as a roving "super agency" with plenary oversight in such matters.
The sole issue before the court on first-tier certiorari review is whether the agency's decision is lawful. The court's task vis-a-vis the third prong of Vaillant is simple: The court must review the record to assess the evidentiary support for the agency's decision. Evidence contrary to the agency's decision is outside the scope of the inquiry at this point, for the reviewing court above all cannot reweigh the "pros and cons" of conflicting evidence. While contrary evidence may be relevant to the wisdom of the decision, it is irrelevant to the lawfulness of the decision. As long as the record contains competent substantial evidence to support the agency's decision, the decision is presumed lawful and the court's job is ended.
794 So.2d at 1275-76 (emphasis added).
Just as in Fla. Power & Light, the circuit court in this case determined anew the factual issues concluded by the Town. Two issues were present: (1) whether the petitioners (now respondents) showed that the zoning change was consistent with the plan; and (2) if so, whether the board proved that its denial served a legitimate public purpose and was not arbitrary and unreasonable. Because the Town denied the permit without making specific findings, we must conclude that the Town found either that the petitioners (now respondents) did not prove that the zoning change was consistent with the plan or that the denial served a legitimate public purpose. Thus, it was the circuit court's duty to review the record solely to determine whether competent substantial evidence supported a determination that the zoning change was consistent with the plan and whether competent substantial evidence supported the conclusion that there was a legitimate public purpose to maintain the current classification. See Snyder, 627 So.2d at 476 (holding that the board is not required to make findings of fact; in order to sustain the board's action on certiorari review, it must be shown that there was competent substantial evidence to support the board's ruling).
Instead, the circuit court determined that competent substantial evidence supported the landowner's contention that the zoning change was consistent with the plan. This was, in essence, a finding of fact made by the circuit court, deciding anew the first issue of whether the requested zoning change was consistent with the plan. What it should have determined is whether there was competent substantial evidence to support a conclusion that the change was inconsistent with the plan.
From the record before us, it is clear that the court, similar to the circuit courts in Dusseau and Florida Power & Light, engaged in a reweighing of conflicting evidence and ignored evidence which supported the commission's decision. The court appears to have applied the "competent substantial evidence" standard of proof, as set forth in Irvine v. Duval County Planning Commission, 495 So.2d 167 (Fla. 1986), rather than the standard of review. It found the existence of competent, *1034 substantial evidence to support respondents' assertion, which is not part of the review process outlined by Vaillant and constituted a departure from the essential requirements of law. See Fla. Power & Light, 761 So.2d at 1093; St. Johns County v. Smith, 766 So.2d 1097, 1100 (Fla. 5th DCA 2000). Moreover, its determination that the denial constitutes reverse spot zoning also ignores evidence, particularly the historical record, in support of the zoning in place. We think the circuit court's opinion suffers from the same flaw as the circuit court's analysis in Florida Power & Light in that it conducted a de novo review of the application, using the Irvine allocation of burden of proof.
Finally, the circuit court's direction to the Town to develop reasonable restrictions on the construction of docks on the properties is contrary to Broward County v. G.B.V. International, Ltd., 787 So.2d 838 (Fla.2001). In any reconsideration of this matter, the circuit court does not have jurisdiction through its appellate certiorari power to direct the Town to any particular course of action. See id. at 844.
Because the circuit court essentially conducted a de novo review of the case and substituted its judgment for that of the local planning agency, we grant the Town's petition and direct the circuit court to reconsider the petition and apply Vaillant's standard of review.
POLEN, C.J., and MAY, J., concur.