GROSS, J.
The Town of Juno Beach petitions for certiorari review of a circuit court opinion that granted certiorari and quashed the Town’s decision to rezone certain property. We grant the petition and quash the decision of the circuit court.
In March, 1999, Celestial Court Partnership (Celestial) applied to the Town for a zoning change as to an undeveloped parcel of property it owns. The parcel is located on the northeast corner of Olympus Drive and U.S. Highway One; it is 125 feet by 200 feet, with 125 feet of frontage on U.S. One, the property’s western boundary, and 200 feet on Olympus Drive.
As to the west 120 feet of the property, Celestial sought to change the zoning from RS-1, residential single family with low density, residential future land use, to CO, commercial office with commercial future land use. The application proposed that the east 80 feet of the property remain single family residential to create a buffer to the adjacent single family area. Celestial desired to develop a mixed-use two story building with professional offices on the ground floor and residential apartments on the second floor.
The application indicated that residential areas lay to the property’s north, east, and south, but across the highway to the west was Seminole Plaza, a 60,000 square foot commercial shopping center. Along with the rezoning request, Celestial sought to amend the Town’s comprehensive plan, to change the future land use from the existing Low Density Residential to a Commercial future land use classification.
The town staff report recommended granting the request. The report observed that the property was approximately .57 of an acre and that the proposed rezoning would cover the west portion, about .34 of an acre. Staff wrote that the rezoning was consistent with the proposed commercial future land use classification. The report noted that the property to the west was zoned Commercial General (CG), a more intense use than that sought by Celestial. Staff stated that the proposed mixed use project
will provide a consistent transition from the highway and more intensive uses to the west, to a mixed use of less intensive commercial office and residential uses. Further, the proposed mixed use is a much needed element within town. In this general area of town there are two existing mixed use sites, which function and co-exist very well within their neighborhoods.... Mixed uses are transitional uses. Transitional uses are a necessary element for a sustainable community. Transitional uses allow communities to identify themselves as individual places, among a larger sprawl-like general area, such as greater Palm Beach County.
Staff described the proposed use as “an ideal transition use from commercial uses across the highway and single family residential uses to the east.”
The town council held two public hearings on changing the land use designation and zoning. The council heard expert and lay opinions on all sides of the proposed changes. The council voted to adopt Ordinance 509, which amended the future land use map of the comprehensive plan for the property from residential use to commercial use. The council voted to approve Ordinance 510 to rezone the property from residential to CO.
Respondent T. Bragg McLeod owns a single family residence 300 feet east of the property at issue. He filed a petition for writ of certiorari in the circuit court challenging the rezoning. At the same time, in an administrative proceeding, McLeod and *866 others unsuccessfully challenged the amendment to the future land use map.[1]
A three-judge panel of the circuit court granted the petition for writ of certiorari and quashed the town’s rezoning decision. The circuit court wrote that “[wjhether the town departed from the essential requirements of law depends largely on what constitutes the ‘neighborhood’ for purposes of rezoning.” After observing that there “is no definition of ‘neighborhood’ in the Town’s comprehensive plan or in Chapter 163, Part II, Florida Statutes (2000),” the circuit court nevertheless concluded that “existing Florida law does not permit the Town to extend” the commercial use across U.S. Highway One “in the manner that it did.” The circuit court also ruled that the town’s “action constituted spot zoning.” Finally, after a discussion of the conflicting evidence at public hearings, the circuit court concluded that there was “no competent substantial evidence” to support the rezoning.
This court described the two-tier framework for review of a zoning decision in Town of Manalapan v. Gyongyosi, 828 So.2d 1029, 1032 (Fla. 4th DCA 2002):
In the “first-tier” review, a party may seek certiorari review in the circuit court, which is more akin to an appeal and is not discretionary. The court must review the record from the commission decision and determine whether: (1) procedural due process has been afforded; (2) whether the essential requirements of law have been observed; and (3) whether competent substantial evidence supports the commission’s judgment. The “competent substantial evidence” standard of review applied to this first-tier review “is tantamount to legally sufficient evidence.” On certio-rari petition to the district court, “second-tier” review, that court is limited to determining whether procedural due process has been afforded and whether the circuit court applied the correct law. It is not allowed to determine whether the commission decision is supported by competent substantial evidence.
(Citations omitted).
We agree with the Town that the circuit court failed to apply the correct law and failed to apply the correct standard of certiorari review when it substituted its evaluation of competent substantial evidence for that of the Town.
The circuit court applied the wrong law, in that it did not evaluate this zoning request within the context of the Town’s comprehensive plan, which designates this property for commercial rather than residential use. Coastal Dev. of N. Fla., Inc. v. City of Jacksonville Beach, 788 So.2d 204 (Fla.2001) (zoning changes are scrutinized by the circuit court on certiorari review to assure strict compliance with comprehensive plan).
The circuit court relied instead on cases which are distinguishable. They were decided long before the adoption of local *867 comprehensive plans pursuant to Chapter 163, Florida Statutes, which governs comprehensive planning. Also, those cases affirmed the local government’s exercise of discretion, and, therefore, do not stand for the proposition that the Town acted arbitrarily in this case. City of Miami Beach v. Wiesen, 86 So.2d 442 (Fla.1956) (affirming city’s zoning decision by reversing circuit court); City of Miami Beach v. Ocean & Inland Co., 147 Fla. 480, 3 So.2d 364 (1941) (reversing circuit court and affirming city’s down zoning); Harris v. City of Coral Gables, 157 So.2d 146 (Fla. 3d DCA 1963) (affirming dismissal of case where property in one city asked to be zoned similarly to adjacent property in different city); Town of Surfside v. Skyline Terrace Corp., 120 So.2d 20 (Fla. 3d DCA 1960) (reversing court’s reversal of zoning decision on the ground that the town’s decision as to where a zoning district ends was a legislative action).
Because comprehensive plan policies are implemented through zoning codes, the circuit court was also required to apply the zoning code. See Broward County v. G.B.V. Int’l, Ltd., 787 So.2d 838 (Fla.2001) (decision granting or denying development order is governed by local regulations, which must be uniformly administered); Davis v. St. Joe Paper Co., 652 So.2d 907, 910-11 (Fla. 1st DCA 1995) (Ervin, J., concurring) ((citing City of Cape Canaveral v. Mosher, 467 So.2d 468 (Fla. 5th DCA 1985)), for the proposition that, under the Florida Statutes which govern planning and zoning, after adoption of a comprehensive plan, zoning changes should be made when existing zoning is inconsistent with the plan to make the zoning more consistent with the plan).
The Town’s zoning code designates only two zoning categories for land with a commercial land use designation — General Commercial and Commercial Office. The Commercial Office zoning placed on the property by the Town is the less intense use category consistent with the plan. It was adopted by the Town to serve as a buffer between commercial uses and residential uses, which is the use to which it was put on this property.
Thus, when the land-use designation for this property was changed to commercial, the existing residential zoning became inconsistent with the plan. The new zoning category is consistent with all controlling statutes and ordinances. Also, as a matter of law, the change did not constitute “spot zoning.”[2] S.W. Ranches Homeowners Ass’n v. Broward County, 502 So.2d 931, 935 (Fla. 4th DCA 1987) (zoning change not spot zoning because it was consistent with the purposes of the comprehensive plan).
Florida law does not supply a hard and fast definition of “neighborhood” from which the Town departed in making its zoning decision. Here, the decision as to what constitutes a “neighborhood” was a factual, not a legal one. The town’s zoning code allows it to take adjoining uses into consideration as a factor in rezoning, including the fact that the subject property adjoins a four-lane divided highway, with an average daily traffic count of 24,000 trips and with a projected widening to six lanes.
*868 In addition, the circuit court failed to grasp its role in the review process. As the supreme court explained in Dusseau v. Metropolitan Dade County Board of County Commissioners, 794 So.2d 1270, 1275-76 (Fla.2001):
We reiterate that the “competent substantial evidence” standard cannot be used by a reviewing court as a mechanism for exerting covert control over the policy determinations and factual findings of the local agency. Rather, this standard requires the reviewing court to defer to the agency’s superior technical expertise and special vantage point in such matters. The issue before the court is not whether the agency’s decision is the “best” decision or the “right” decision or even a “wise” decision, for these are technical and policy-based determinations properly within the purview of the agency. The circuit has no training or experience — and is inherently unsuited — to sit as a roving “super agency” with plenary oversight in such matters.
It is also apparent from the opinion that the circuit court reweighed the evidence. Like the circuit court in Gyongyosi, the court “engaged in a reweighing of conflicting evidence and ignored evidence which supported” the town’s decision. 828 So.2d at 1032. It “appears to have applied the ‘competent substantial evidence’ standard of proof, as set forth in Irvine v. Duval County Planning Commission, 495 So.2d 167 (Fla.1986), rather than the standard of review.” Gyongyosi, 828 So.2d at 1032.
For these reasons, we grant the Town’s petition and quash the circuit court’s decision.
GUNTHER and WARNER, JJ., concur.

. McLeod and others filed a petition for formal administrative hearing with the State of Florida, Department of Community Affairs, pursuant to section 163.3184(9), Florida Statutes (2000). They contended that the land use plan amendment constituted spot planning, because it was a piecemeal changing of the use affecting a single lot, increasing its density and intensity and creating disharmony in the area. They sought an order finding that the change was not in compliance with the local government comprehensive planning and land development regulation act, and recommending that the amendment not become effective. Following a two-day hearing, the administrative law judge recommended that the department issue a final order determining that the plan amendment was in compliance. Over McLeod’s exceptions, the Department issued a final order dated May 30, 2001, accepting the administrative law judge’s recommendation and determining the comprehensive plan amendment to be in compliance. The order was not further challenged.

. See Bird-Kendall Homeowners Ass’n v. Metro. Dade County Bd. of County Comm'rs, 695 So.2d 908 (Fla. 3d DCA 1997). Though the circuit court relied on Bird-Kendall for the conclusion that this was spot zoning, the third district did not address the consistency of the zoning designation with the comprehensive plan. Additionally, it is distinguishable in that there was no similarly zoned land nearby. In this case, there is commercial development right across the street. Allapattah Cmty. Ass’n v. Miami, 379 So.2d 387 (Fla. 3d DCA 1980), is distinguishable in that staff disapproved of the change with the result that there was no substantial evidence to support it.